**Zane Lee HAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–87–0249–CR.**

Court of Appeals of Texas, Amarillo.

Nov. 10, 1988.

Rehearing Denied Dec. 9, 1988.

**56**

Bruner, McColl & McColloch, Arch C. McColl, III, and David W. Coody, Dallas, for appellant.

Travis Ware, Dist. Atty., Michael West, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Zane Lee Ham appeals from his conviction for injury to a child and the consequent jury-assessed punishment of life imprisonment in the Department of Corrections. Appellant attacks his conviction in seven points of error. In those seven points, he argues that the trial court erred in (1) failing to grant a new trial because of the State's suppression of exculpatory evidence; (2) failing to declare a mistrial because of the prosecutor's improper comment on the defendant's failure to testify; (3) excluding the testimony of three witnesses; and (4) admitting scientifically unreliable testimony as to the time of the infliction of the child's injuries. We reverse the conviction and remand the cause for new trial.

Appellant was convicted of the offense of injury to a child, Amber Lee Lawson. The theory of the State, accepted by the jury, was that the child died as a result of a subdural hemorrhage caused by a severe shaking which occurred during a time that the child was in the exclusive care of appellant, *i.e.,* the morning of Tuesday, March 4, 1986. The State's theory of the case was supported by the testimony of the treating pediatrician, Dr. Ray Farmer, whose opinion was that the injuries occurred one to one and one-half hours prior to the time of the arrival of the child at the hospital, or approximately 9:00 to 9:30 a.m. on March 4. Dr. Ralph Erdmann, an Amarillo pathologist, also testified that the injuries were inflicted approximately 55 hours before the death of the child, or approximately 9:00 a.m. on March 4.

Appellant's defense centered on an attempt to show that the child suffered serious brain injuries inflicted during a period from the evening of Friday, February 28, 1986, through the morning of Monday, March 3, 1986. This was a time frame when the deceased was with her mother and stepfather and appellant was out of town. Following this injury, appellant contended, the child was able to function until her collapse on March 4.

In support of his theory, appellant presented the testimony of Dr. M.F.G. Gilil-

land, who was a medical examiner for Dallas County. Based upon her review of Dr. Erdmann's pathology laboratory report on the autopsy of the dead child, photographs of the child's body, and microscopic slides prepared by Dr. Erdmann, it was her opinion that the injury occurred some three to five days prior to death, probably on March 2, 1986. She also opined that it was impossible to time the injuries of the child within one to one and one-half hours as was done by Dr. Farmer.

Under his first two points, appellant argues that the trial court reversibly erred in failing to grant his motion for new trial because of "the State's suppression of exculpatory evidence from Dr. Marc Krouse." This follows, he reasons, because that action violated the mandate of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), that due process is violated when the prosecution suppresses exculpatory evidence following a specific request for such evidence by the defense. Moreover, he continues, that action violated the requirement of article 2.01, Texas Code of Criminal Procedure Annotated (Vernon Supp.1988), that the prosecution "shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused."

The State responds to this contention with the argument that the evidence of Dr. Krouse, "while it may have been helpful to the defense, was not material to the issue of guilt because it was consistent with the State's evidence." The State also argues that reversal is not required because appellant's counsel knew of Dr. Krouse and his whereabouts and because the prosecution did not call Dr. Krouse and did not use any of his reports.

At the hearing on the motion for new trial, Dr. Krouse testified that he was a deputy chief medical examiner for Tarrant and Parker Counties. He was contacted by the Lubbock County District Attorney's office and requested to conduct an examination for them "promptly" of the autopsy reports and ancillary slides. He was also told that there was a difference of opinion on how old the injuries were. After examination of the material forwarded, he found some evidence of an older injury and requested more tissue before making a conclusive report. Specifically, he said "I detected on one of these sections of tissue what appeared to be injury that could not have occurred within just a few days prior to the child's death. That is, less than three or four days." Both he and his superior, the chief medical examiner, agreed that there "was no way to tell in the slides that we had exactly how old it was. That we needed to do some further investigation." He also said there was no description of any such older injury in the autopsy report prepared by Dr. Erdmann and furnished to Krouse.

Krouse later received the requested material from Dr. Erdmann. Upon examination of the material, he found evidence of older injuries that were indicated to have occurred at least five to seven days, possibly ten, prior to the date of death. He relayed this information to the district attorney's office the morning after he completed that examination. Krouse said he also told the State that he "would not try to be so precise in the aging of the subdural hematoma as to say 55 hours" as had Dr. Erdmann. It was his conclusion that "the only legitimate time frame I could put on it was less than three to four days" from the date of death.

Dr. Krouse denied that he had made a statement to the district attorney's office that his testimony was equally supportive of the State's theory or of the defense theory because he had no theories available to him. Dr. Krouse agreed that it was possible that a child of the deceased's age, who had suffered such injuries, could have a lucid interval of possibly 24 to 36 hours subsequent to the injury. Dr. Krouse testified that he orally furnished his findings to the State during the week of trial.

It is undisputed that appellant had filed, and was granted, a "Brady" motion to require the State to reveal exculpatory evidence. It is also undisputed that appellant's counsel, shortly prior to the commencement of trial, specifically inquired as to whether the State's lead counsel had

received the results of Dr. Krouse's examination and was informed that the result of that examination would be furnished as soon as it was received. It is also uncontroverted that the prosecutor was cognizant that the defense theory depended heavily upon evidence of an older injury. She acknowledged that Krouse's testimony "could have been helpful" to the defense and that she considered contacting the judge and discussing the matter with him, but did not do so and, of course, did not inform appellant's trial counsel of Krouse's oral report to her.

It is well established that reversible error is presented where a prosecutor negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense, even though such evidence was not offered as testimony at the trial and even though the accused's counsel is not diligent in his preparation for trial, with the focus being upon the essential fairness of the procedure and not on the astuteness of either counsel. The decision must be made on a case by case basis and the standard to be applied in making that decision has been whether the testimony "may have had an effect on the outcome of the trial." *Means v. State,* 429 S.W.2d 490, 494 (Tex.Crim.App.1968). Further, the mere possibility that the evidence might help the defense or otherwise affect the outcome of the trial does not establish its materiality in the sense necessary to merit reversal of a conviction. Rather, when evaluated in the context of the entire record, to require its disclosure the evidence must be such as to "create a reasonable doubt [about the defendant's guilt] that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976); *Whit-*

*church v. State,* 650 S.W.2d 422, 425 (Tex. Crim.App.1983); *Quinones v. State,* 592 S.W.2d 933, 941 (Tex.Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed. 2d 121 (1980); *Butler v. State,* 663 S.W.2d 492, 495 (Tex.App.—Dallas 1983), *affirmed,* 736 S.W.2d 668 (Tex.1987).

We have reviewed the entire record in the light of the teaching of the above cases. It is obvious that the most crucial issue in this case was the timing of the injuries inflicted upon the child. Dr. Krouse's testimony is, inescapably, favorable to the defense theory in the case. That testimony tended to confirm Dr. Gililland's testimony and to disagree with the testimony of the State's chief witness, Dr. Erdmann, both as to the nature of the injuries and as to the ability to determine with specificity the time that the injuries were inflicted. The testimony was, therefore, of material importance to the defense within the context of the rules above articulated. Moreover, it is evidence "tending to establish the innocence of the accused" within the purview of Texas Rule of Appellate Procedure 30(b)(5). Appellant's first two points of error are sustained.

Our sustention of appellant's first two points obviates the necessity for discussion of the remainder of his points of error and requires a remand of this cause for new trial. Accordingly, the judgment of the trial court is reversed and the cause remanded for new trial.