822 S.W.2d 110 (1991)
Calvin Edward WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 10-88-054-CR.
Court of Appeals of Texas, Waco.
November 20, 1991.
Discretionary Review Granted March 4, 1992.
*112 Walter M. Reaves, West, for appellant.
John W. Segrest, Crim. Dist. Atty., Doyle D. Glass, Asst. Dist. Atty., Ed Lane, Asst. Dist. Atty., Waco, for appellee.
Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.
VANCE, Justice.
Appellant was convicted of the capital murder of Juanita White and assessed life in prison. See Tex.Penal Code Ann. § 19.03 (Vernon 1989). On appeal, he complains that the court erred when it (1) ordered him to submit a blood sample when probable cause was not established, (2) admitted a shirt into evidence when no connection was shown between the shirt and the offense, (3) forced his investigator to produce his work product, (4) allowed the State to improperly use a taped interview to bolster the testimony of one of its witnesses, and (5) refused to grant a mistrial after several instances of improper jury argument. He also asserts that the State failed to disclose exculpatory evidence under an order of the court. We will affirm.

THE OFFENSE
Juanita White was found dead in her home, beaten and raped, on the morning of March 2, 1986. The front door of her house had been kicked in. She had returned home from work about 10:00 p.m. on March 1. The jury was charged under the law of parties, the State having alleged in the indictment that Appellant, either acting alone or as a party with Joe Sidney Williams, intentionally killed Mrs. White in the course of committing burglary or sexually *113 assaulting her.[1] The State produced evidence that Mrs. White died of bluntforce injuries and asphyxia by smothering or strangulation, that she had been sexually assaulted, that Appellant and Williams were together and in possession of her car on the morning of March 2, that Appellant sold items of property belonging to Mrs. White on the night of the murder, that Appellant told witnesses he had committed the burglary, that bite marks were on the body, and that Appellant was overheard saying that the bite marks were left as a "trace mark." A jury convicted Appellant of capital murder but assessed a life sentence when it failed to affirmatively answer all of the questions required by article 37.071. See Tex.Code Crim.Proc.Ann. art. 37.071 (Vernon Supp.1991).

THE BLOOD SAMPLE
In point one, Appellant asserts that the court erred in ordering him to submit a blood sample because the order was not based on an affidavit which established probable cause to take the sample. He contends that the sample was taken in violation of the Fourth Amendment to the United States Constitution and article 1, section 9, of the Texas Constitution. See U.S. Const, amend. IV; Tex. Const, art. I, § 9. Prior to trial Appellant contested the State's unsworn motion to require him to submit a blood sample. After the hearing, the court simply "granted" the motion and did not issue a search warrant. The blood sample was submitted to a laboratory for tests and the results were admitted into evidence.
Taking a sample of a defendant's blood is a search and seizure. Gentry v. State, 640 S.W.2d 899, 902-03 (Tex.Crim. App.1982); Ferguson v. State, 573 S.W.2d 516, 520 (Tex.Crim.App.1978), cert, denied, 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979); Smith v. State, 557 S.W.2d 299, 301 (Tex.Crim.App.1977). To obtain a search warrant for blood, the state is required to comply with the provisions of article 1.06 and chapter 18 of the Code of Criminal Procedure. Smith, 557 S.W.2d at 301; see also Longoria v. State, 636 S.W.2d 521, 522 (Tex.App.Texarkana 1982, pet. ref'd); Tex.Code Crim.Proc.Ann. arts. 1.06, 18.02 (Vernon 1977 and Vernon Supp.1991). A motion alone will not pass constitutional muster. Smith, 557 S.W.2d at 301.
Appellant's complaint is that the court's pre-trial ruling on the State's motion led to admitting testimony of the test results. The State contends that, because Appellant gave his written consent to the taking of blood, hair and saliva, any question of the validity of the court's pretrial order is immaterial. The witness who identified the consent form testified without objection that Appellant signed a form authorizing officers to take the samples. Thus, the State met its burden of showing that Appellant freely and voluntarily consented to the taking of a sample of his blood, and any error which resulted from the court's improper pretrial order was harmless. See Harris v. State, 790 S.W.2d 568, 584-88 (Tex.Crim.App.1989); Ferguson, 573 S.W.2d at 521; Tex.R.App.P. 81(b)(2).
Additionally, the State was allowed to question the forensic serologist about tests run on the blood sample over this objection:
[Appellant's Attorney]: I object to any testimony of that nature because it's the product of actions invading Mr. Washington's Sixth Amendment rights under the United States Constitution.
The Court: All right, sir. I overrule that objection.
(Emphasis added). Noting that the Sixth-Amendment objection made when the test results were offered does not comport with the point on appeal, i.e., that the evidence was obtained in violation of the Fourth Amendment, we hold that Appellant's right to complain about the court's admitting the test results has been waived and nothing is presented for our review. See Sharp v. *114 State, 707 S.W.2d 611, 619 (Tex.Crim.App. 1986), cert, denied, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); White v. State, 543 S.W.2d 366, 369 (Tex.Crim.App. 1976); Bouchillon v. State 540 S.W.2d 319, 322 (Tex.Crim.App.1976). We overrule point one.

THE SHIRT
In point two, Appellant asserts that the court erred when it admitted into evidence a shirt which the State did not connect to the offense. The shirt was seized during a search of Appellant's room, which was consented to by his sister. It contained human blood stains which were never identified. Witnesses for the State testified that they had seen Appellant wearing the shirt on other occasions. Appellant argues that, because the witnesses were unable to say that he was wearing it on the night of the murder, no connection exists between the shirt and the offense and, therefore, the shirt was not relevant evidence.
The State contends that the point is not properly preserved for appellate review. We agree. At trial, Appellant objected to the admissibility of the shirt on the grounds that it was obtained by an illegal search and seizure. His point on appeal is that the shirt was irrelevant because it was not connected to the offense. Because Appellant's point on appeal does not comport with his complaint at trial, we hold that Appellant's right to complain about the court's admitting the shirt has been waived and nothing is presented for our review. See id.
Even assuming that the point was properly preserved, we do not believe that the court erred in admitting the shirt into evidence. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Crim.Evid. 401. Rule 402 provides in part: "Evidence which is not relevant is inadmissible." Id. at 402. The court has wide discretion in determining whether evidence is relevant to any issue in the case. Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex.Crim.App.1991) (on rehearing); Paz v. State, 749 S.W.2d 626, 629 (Tex.App. Corpus Christi 1988, pet. ref'd); Tex. R.Crim.Evid. 401. In reviewing questions of this nature, we determine only whether the trial judge abused his discretion in allowing the evidence to be admitted. See id.
Rule 403 provides in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Tex.R.Crim.Evid. 403. A court cannot refuse to weigh the probative value of evidence against its potential for unfair prejudice when called upon to do so by a sufficient objection; it has no discretion whether to engage in the balancing process. Montgomery, 810 S.W.2d at 389. When the court engages in the balancing process under Rule 403, its determination is also reviewed by the abuse-of-discretion standard. Id. at 391; Tex.R.Crim.Evid. 403. The problem with Appellant's position on appeal is that the objection made at trial was not based on Rule 403. Thus, the objection being insufficient, the need to balance the probative value of the shirt against its prejudicial effect never arose. See id.
Based on the entire record, we cannot say that the court abused its discretion in admitting a shirt with human blood spots found in Appellant's room sixteen days after his arrest. See id. We overrule point two.

WORK PRODUCT OF APPELLANT'S INVESTIGATOR
An investigator working for Appellant interviewed a State's witness, Billy Joe Wilkerson, prior to trial. During trial, Appellant cross-examined Wilkerson about the interview. The State then asked the court to require the investigator to produce the tape of the interview, arguing that the tape was admissible to show Wilkerson's prior consistent statements because Appellant had impeached him and to clear up misleading questions on cross-examination. The court, after conducting an in camera inspection of the tape, admitted into evidence *115 the entire tape of the conversation between the investigator and Wilkerson. In point three, Appellant claims that the work-product privilege precludes use of the taped interview. See United States v. Nobles, 422 U.S. 225, 228-240, 95 S.Ct. 2160, 2165-71, 45 L.Ed.2d 141 (1975). In point four he asserts that, because the witness was not impeached, prior consistent statements were not admissible.
During Appellant's cross-examination, Wilkerson denied telling the investigator that the murder was committed by a person named "Don." He freely admitted, however, making all other statements to the investigator which Appellant wished to show as contradicting statements he made at trial. As to those statements, he stood impeached and prior contradictory statements were not admissible. See McGary v. State 750 S.W.2d 782, 786 (Tex.Crim.App. 1988). As to the statements about "Don," the State, not the defendant, wanted to introduce prior statements made to the investigator. Thus, two questions are presented. Did the court err in requiring Appellant's investigator to produce a tape made during the investigation leading up to trial? Assuming that the court properly required Appellant to deliver the tape, was the entire conversation admissible or was Wilkerson impeached so that "prior consistent statements" were admissible?
The State urges that the Gas kin rule should apply. See Gaskin v. State, 172 Tex.Crim. 7, 353 S.W.2d 467, 469 (1961) (on rehearing). That rule allows a defendant, on timely request, to obtain access to a prior statement of a prosecution witness and to use that statement in cross-examination and for impeachment, even though the witness did not refer to the statement during his testimony or use it to refresh his memory. Id.; Cullen v. State, 719 S.W.2d 195, 196 (Tex.Crim.App.1986). The State cannot avoid the rule by making a taperecorded statement rather than a written statement. Cullen, 719 S.W.2d at 197-98. Gaskin is not applicable here. First, Gaskin does not apply to requests by the state. See Gaskin, 353 S.W.2d at 469. Second, in attempting to obtain the investigator's interview with Wilkerson, the State was seeking the prior statement of its own witness.
The State, however, also directs us to article 38.24 of the Code of Criminal Procedure, now embodied in Rule 107 of the Rules of Criminal Evidence. See Tex. R.Crim.Evid. 107. The "Rule of Optional Completeness" allows an adverse party to introduce the whole of an act, declaration, conversation, writing or recorded statement, when a part of same has been given in evidence. Id. Rule 107 is a rule of admissibility. Id.; 33 S. Goode, O. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 107.1 (Texas Practice 1988). It is grounded in the notion that evidence used to fully explain a matter opened up by the other party need not be ordinarily admissible. Parr v. State, 557 S.W.2d 99, 102 (Tex.Crim.App.1977); Tex.R.Crim.Evid. 107; 33 S. Goode, O. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence; Civil and Criminal § 107.1 (Texas Practice 1988). Thus, if the court had authority to require Appellant to deliver the tape, then the whole of the "conversation" between the investigator and Wilkerson would be admissible under Rule 107 because Appellant first questioned Wilkerson about it. See id.
We now turn to the work-product doctrine. Whereas Rule 503, the attorneyclient privilege, is designed to encourage confidential communications between clients, attorneys, and their representatives and prevents disclosure of those confidential communications to protect the client, the work-product doctrine is designed for the benefit of the attorney.[2] Tex.R.Crim. Evid. 503; 33 S. Goode, 0. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 503.2 (Texas Practice 1988). The scope of the doctrine is not well-defined in criminal cases. 33 S. *116 Goode, O. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 503.2 (Texas Practice 1988). Because discovery in criminal cases is a one-way street, courts have not been called upon to determine the extent to which defense counsel's work product is protected. Id.
The work-product doctrine is a practical one, grounded in the realities of our adversary system of criminal justice. Nobles, 422 U.S. at 238, 95 S.Ct. at 2170. The doctrine shelters "the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case." Owens-Corning Fiberglas Corporation v. The Honorable Neil Caldwell, Judge, 818 S.W.2d 749, 750, (Tex. 1991). The doctrine does not, however, extend to facts the attorney may acquire. Id. at 750 n. 2. Attorneys must rely on the assistance of investigators and others in assembling and preparing materials for trial. Nobles, 422 U.S. at 238, 95 S.Ct. at 2170. The protection afforded by the doctrine must protect materials prepared by agents for the attorney as well as those prepared by the attorney, and it is available at trial, as well as during pretrial. Id. at 239, 95 S.Ct. at 2170. "Under the doctrine of waiver by offensive use, a party may not `use one hand to seek affirmative relief in court and with the other hand lower an iron curtain of silence around the facts of the case.'"[3]Owens-Corning Fiberglas, 818 S.W.2d at 752.
Criminal defendants do not have a general right to discover evidence in possession of the state. Kinnamon v. State, 791 S.W.2d 84, 91 (Tex.Crim.App.1990); Quinones v. State, 592 S.W.2d 933, 940 (Tex. Crim.App.1980), cert, denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Article 39.14 allows the trial judge to use discretion in decisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or privileged. Id.
When invoked by the state, the work-product doctrine has generally been limited to documents which do not contain admissible evidence of the offense but instead are summaries of the evidence or discussions about the offense. Quinones, 592 S.W.2d at 940. Examples of materials covered by the doctrine are offense reports, investigative reports prepared by the police, internal prosecution files and papers, reports of lab tests on narcotics, and statements prepared by officers after interviewing prospective witnesses. Id. It does not extend to statements by witnesses, even though prepared by an investigator, to statements used before the jury, or to tape recordings of direct statements. Id.; see also Cullen, 719 S.W.2d at 196; Mendoza v. State, 552 S.W.2d 444, 447-49 (Tex.Crim.App. 1977); Gaskin, 353 S.W.2d at 469. The state has no right to use the work-product doctrine as a shield against disclosure of anything exculpatory in nature or mitigating in favor of the defendant. Brady v. Maryland, 373 U.S. 83 87-88, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963); Kinnamon, 791 S.W.2d at 91; Quinones, 592 S.W.2d at 940.
These general work-product rules should also apply to materials in the hands of defense counsel. Direct written or recorded statements are not protected by the work-product doctrine because the "need to develop all relevant facts in the adversary system [is] both fundamental and comprehensive" and because "the very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." See Nobles, 422 U.S. at 230-31, 95 S.Ct. at 2166; United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). To achieve these ends, "compulsory process [must] be *117 available for the production of evidence needed by either the prosecution or the defense." Id.
The court properly required Appellant to produce a tape recording of an interview with a witness who testified at trial. After an in camera review, the tape was played for the jury. No error occurred. See id.; Quinones, 592 S.W.2d at 940. We hold that the taped interview of a State's witness by Appellant's investigator was properly admitted into evidence after a portion of the conversation was introduced by Appellant on cross-examination. See id.; Tex. R.Crim.Evid. 107. Having so held, we need not consider whether Wilkerson was impeached or whether his statements were admissible as prior consistent statements. Points three and four are overruled.

STATE'S FINAL ARGUMENT
In points five through nine, Appellant complains that the State engaged in improper arguments during the guilt-innocence phase of the trial. Points five and six assert that the prosecutor "struck at him over the shoulders of counsel;" point seven complains that the prosecutor improperly expressed a personal opinion about the facts; point eight is based on a statement by the prosecutor that a witness was scared to come forward; and point nine asserts that the prosecutor invited speculation about evidence from witnesses who did not testify.
Before examining the facts under each point, we will explain the method of analysis that we will apply to each of the allegations of improper jury argument.
Proper jury argument falls within one of the following categories: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). Other arguments are improper.
What is error?
Assuming we find that an argument is improper under Alejandro, what analysis do we then conduct? That analysis depends on what constitutes "error." Is it the improper actin this case, the prosecutor's argument? Or, is it the trial court's mishandling of the act? We believe that only the court can commit "error." However, many appellate courts have implied that the improper act itself is the "error." See Hernandez v. State, 819 S.W.2d 806 (Tex.Crim.App. 1991) (holding that reversible "error" occurs only when the argument is extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jurors by the instruction given, thus incorporating the test for harm into the test for the effectiveness of the instruction); Harris v. State, 784 S.W.2d 5, 12 (Tex.Crim. App.1989) (holding that to preserve "error" in jury argument, the defendant must object)[4]; Hall v. State, 753 S.W.2d 438, 441 (Tex.App.Texarkana 1988), rev'd on other grounds, 795 S.W.2d 195 (Tex.Crim.App. 1990) (holding that the "error" resulting from improper testimony may be cured by instructing the jury to disregard the testimony). Although this appears to be a matter of semantics, it is more. We cannot apply the harm analysis required by Appellate Rule 81(b)(2) until we determine that the court made an incorrect ruling. See Orona v. State, 791 S.W.2d 125, 129-30 (Tex.Crim.App.1990); Tex.R.App.P. 81(b)(2).
HOW DO WE DETERMINE ERROR AND, IF WE FIND ERROR, WHAT STANDARD DO WE APPLY IN DETERMINING HARM?
The Court of Criminal Appeals has held that the harm analysis required by Rule 81(b)(2) applies to jury-argument error. Whiting v. State, 797 S.W.2d 45, 49 (Tex. *118 Crim.App.1990); Orona, 791 S.W.2d at 129-30; Tex.R.App.P. 81(b)(2). Nevertheless, the standards for determining when jury-argument error occurs and for evaluating possible harm have been inconsistently applied. E.g., Hernandez v. State, 819 S.W.2d 806 (Tex.Crim.App.1991); Orona, 791 S.W.2d at 129-30.
A prosecutor's improper jury argument is not "error;" only the court can commit error. Error occurs when (1) the court overrules an objection to an improper jury argument, (2) the objection is sustained, but the court denies a request for an instruction to disregard the improper argument, or (3) the objection is sustained, an instruction is given, and the court improperly denies a motion for mistrial. Holier v. State, 518 S.W.2d 373, 375 n. 2 (Tex. Crim.App.1975); Tyrrell v. State, 656 S.W.2d 671, 672 (Tex.App.Fort Worth 1983, pet. ref'd).
When the court overrules an objection to improper jury argument, error results, and a harm analysis must proceed under Rule 81(b)(2). Orona, 791 S.W.2d at 129-30; Tex.R.App.P. 81(b)(2).
If the argument is improper and the objection is sustained, the court should always grant a request to instruct the jury to disregard the improper argument. If, however, the court refuses to instruct the jury to disregard the improper argument, error results, and a harm analysis must proceed under Rule 81(b)(2). E.g., Whiting, 797 S.W.2d at 48-49; Tex.R.App.P. 81(b)(2).
A problem arises when an instruction is given, but the court denies a motion for mistrial. How do we determine if the denial of the motion for mistrial was error? We cannot apply Rule 81(b)(2) because we have not yet determined that the denial was error.[5] We are aware of the Court of Criminal Appeal's opinion in Griffin v. State, in which it reversed the appellate court for applying the "manifestly improper, harmful and prejudicial" test found in Burke v. State instead of applying Rule 81(b)(2). See Griffin v. State, 779 S.W.2d 431, 433-34 (Tex.Crim.App.1989); Burke v. State, 652 S.W.2d 788, 790-91 (Tex.Crim. App.1983); Tex.R.App.P. 81(b)(2).
The only way to resolve this dilemma is to apply a test for determining error. We hold that, if an instruction is given and the court denies the defendant's motion for a mistrial, error results only when the argument is extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jurors by the instruction given. See Johnson v. State, 698 S.W.2d 154, 167 (Tex. Crim.App.1985), cert, denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); Hernandez, 819 S.W.2d 806 (Tex.Crim.App. 1991); Kinnamon, 791 S.W.2d at 89. If, by applying that test, the appellate court determines that an error occurred, then a harm analysis proceeds under Rule 81(b)(2).[6]Whiting, 797 S.W.2d at 49; Orona, 791 S.W.2d at 129-30; Tex.R.App.P. 81(b)(2).
If the instruction given can be said to have removed the prejudicial effect of the improper argument, no error results from the overruling of a motion for mistrial. Hernandez, 819 S.W.2d at 820.
We recognize that a determination that improper jury argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statute will usually result in a finding that *119 the defendant was harmed. This is not necessarily so, however, because the determination of error is viewed as of the point in time when the alleged error occurred, whereas the analysis of harm under Rule 81(b)(2) encompasses a review of the entire record. See Harris v. State, 790 S.W.2d 568, 586 (Tex.Crim.App.1990); TEX.R.APP.P. 81(b)(2). Thus, events after the error occurred may have an impact on whether the error in denying the motion for mistrial harmed the defendant.
Striking at appellant over defense counsel's shoulders
In points five and six, Appellant complains that the State, in final argument during the guilt-innocence phase of the trial, "struck at him over the shoulders of counsel" by criticizing his lawyer for asserting legitimate defenses. Point six complains of the prosecutor's saying:
[Prosecutor]: A real big deal was made of this shirt. And it was a very clever, a very clever production, very clever production. Let me say one thing
[Appellant's Attorney]: Your honor, I object to improper attack on defense counsel.
The Court: Overruled.
[Prosecutor]: One thing they did, they put this on Calvin Washington. And I believe [Appellant's Attorney] said he's been in jail 634 days. One thing you need to consider, he's been in jail 634 days eating three meals a day.
[Appellant's Attorney]: Your honor, I object. That is not [based on] facts in evidence.
The Court: Overruled.
[Prosecutor]: But one thing that is much more important than that. We never made a big deal about the shirt. Remember what Waymond Dotson said? They went to Gaynelle's house. And Calvin and Joe changed their clothes. Do you remember?
But what did Calvin always wear under his shirt? Always wore it. This. Okay?
So that was a really nice production. But remember what Waymond Dotson said. It would make sense. Calvin would take off the shirt he had on, put another one on over it. But why change this? He didn't realize it had a little blood right here on the sleeve.
I hope that helps you in understanding that production.
Point five complains that, later in the argument, the prosecutor said:
You see what happened? He was there. It was like, all right, you've been talking about Truman Simons. Here he is. Have at him. Go at him. Did they? No.
See. This is how it goes. You go let's get the jury to focus on everybody but that person who has been sitting in the corner for these two weeks.
[Appellant's Attorney]: Your honor, I object. That's outside the record. It's the opinion of the prosecutor. It's an inflammatory argument. And it's an improper attack on defense counsel.
The Court: Overruled.
The state has wide latitude in argument. Denison v. State, 651 S.W.2d 754, 761-62 (Tex.Crim.App. 1983). Special concern, however, should be shown for final arguments which constitute uninvited and unsubstantiated accusations of improper conduct directed at a defendant's attorney. Gomez v. State, 704 S.W.2d 770, 771 (Tex. Crim.App. 1985). Appellant cites cases in which the instances of "improper conduct" argued by the prosecutor were (1) manufacturing evidence, (2) suborning perjury, (3) accepting stolen money or stolen merchandise as a fee, and (4) representing a criminal. E.g., Gomez, 704 S.W.2d at 772; Boyde v. State, 513 S.W.2d 588, 591 (Tex. Crim.App.1974); Bray v. State, 478 S.W.2d 89, 90 (Tex.Crim.App.1972). Assertions (1) that a defense lawyer's "greatest tactic is... `we know we did it, but how do we muddy the waters,'" and (2) that the lawyer's theory "sounds kind of like a courthouse defense more than the truth to me" have also been held to improperly strike at the accused "over the shoulder of counsel." Pogue v. State, 474 S.W.2d 492, 496 (Tex. Crim. App. 1971); Angel v. State, 694 S.W.2d 164, 173 (Tex.App.Houston [14th *120 Dist.] 1985), affirmed, 740 S.W.2d 727 (Tex. Crim.App.1987).
The State contends that the arguments complained of in point five were reasonable deductions from the evidence and in response to Appellant's argument about a State's witness, Simon. We agree. The prosecutor did not refer to Appellant's attorney, stating only "let's get the jury to focus on everybody but that person who has been sitting in the corner for these two weeks." Although the prosecutor's terminology skirted the line between proper and improper argument, we find it to be a reasonable deduction from the evidence and not a strike at Appellant over counsel's shoulders. Alejandro, 493 S.W.2d at 231. The State contends that the arguments complained of in point six were reasonable deductions from the evidence. Again, we agree; the prosecutor did not refer to Appellant's attorney. He stated only that the contest over admissibility of the shirt was a "production." This argument did not strike at Appellant over the shoulders of counsel. Thus, the arguments were proper, and no error occurred when the court overruled the objections. Points five and six are overruled.
Expression of personal opinion
In point seven, Appellant complains that the prosecutor's statement in the guilt-innocence stage, that "I want to tell you that's not the way it happened" was improper because it interjected the prosecutor's personal opinion about the facts. Appellant's objection to the statement was sustained by the court, the jury was instructed not to consider the remark, but his motion for mistrial was overruled.
A prosecutor should not express a personal opinion about the facts. Kinnamon, 791 S.W.2d at 89. If an instruction is given and the court denies the defendant's motion for a mistrial, error results only when the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jurors by the instruction given. Johnson, 698 S.W.2d at 167; Hernandez, 819 S.W.2d 806 (Tex.Crim.App.1991); Kinnamon, 791 S.W.2d at 89. Based on our examination of all of the final arguments, we hold that the prejudicial effect of the improper argument was removed from the minds of the jurors by the instruction to disregard the remarks and thus, no error occurred in denying the motion for mistrial. See Kinnamon, 791 S.W.2d at 89. We overrule point seven.
Allusion to non-testifying witness
Appellant's point eight asserts that the court erred in not granting a mistrial after the State argued that one of the State's witnesses, who testified at trial, had been "scared to death to come in and tell us what happened." Appellant's objection was sustained, the jury was instructed to disregard the argument, and Appellant's motion for mistrial was overruled. Appellant cites several cases which hold that it is error for the state to argue that witnesses are scared to testify when there is no evidence to support the assertion. E.g., Johnson v. State, 662 S.W.2d 368, 369-70 (Tex. Crim.App.1984); Thomas v. State, 519 S.W.2d 430, 431 (Tex.Crim.App.1975); Person v. State, 706 S.W.2d 153, 154 (Tex. App.Houston [1st Dist.] 1986, no pet).
The State, on the other hand, attempts to distinguish the argument from those cases by pointing out that the prosecutor did not argue that the witness was afraid of Appellant. We disagree. In Thomas, the court said that, "[t]o argue that witnesses had been afraid to appear is no less harmful than arguing that their testimony has been coerced, ... [and when] unsupported by the evidence, is to inject new and harmful facts alluding to conduct of the appellant for which he is not on trial." Thomas, 519 S.W.2d at 431. Here, the prosecutor improperly implied that the witness was afraid of Appellant or Williams, the co-conspirator. Because the witness did testify and because the prosecutor did not mention Appellant directly, we hold that the prejudicial effect of the improper argument was removed from the minds of the jurors by the instruction to disregard the remark and thus, no error *121 occurred in denying the motion for mistrial. See Kinnamon, 791 S.W.2d at 89. We overrule point eight.
IMPLICATIONS OF OTHER WITNESSES
In point nine, Appellant complains of the prosecutor's statement: "You can see now no wonder people don't come forward with information. There is no telling how many more people have information." Again, the court sustained Appellant's objection, gave an instruction to disregard, and denied a motion for mistrial.
An argument inviting speculation about evidence from witnesses who did not testify is improper. Johnson v. State, 649 S.W.2d 111, 116 (Tex.App.San Antonio 1983), affirmed, 662 S.W.2d 368 (Tex. Crim.App.1984). Here, the argument was clearly improper. See id. Again, based on our examination of the all of the final arguments, we hold that the prejudicial effect of the improper argument was removed from the minds of the jurors by the instruction to disregard the remark and thus, no error occurred in denying the motion for mistrial. Kinnamon, 791 S.W.2d at 89. We overrule point nine.

EXCULPATORY EVIDENCE
In point ten, Appellant asserts that he was denied due-process rights when the court examined the State's entire file in camera and failed to disclose exculpatory materials. After the trial, Appellant's counsel on appeal was allowed to inspect the sealed records. Based on that examination, Appellant asserts that an interview with Otis Douglas, an inmate of the McLennan County jail who did not testify at Appellant's trial, revealed:
1. That Booker T. Sterling, the witness who testified that Appellant said the bite marks were "trace marks," told Douglas that Appellant "wasn't the one;"
2. That Douglas said he had never known Appellant and Joe Sidney Williams to "hang out" together and was surprised that they were charged together;
3. That Douglas saw Waymond Dotson, who testified at the trial, and Booker Sterling together on what may have been the night of the murder and that Dotson was trying to sell some jewelry; that he saw Angie Miles with them; and that neither Appellant nor Williams was with them;
4. That the "jailhouse rumors" were that a certain State's investigator, who testified at the trial, could help an inmate "get out of jail quick" and that an inmate should see him "before you see your lawyer;" and
5. That while they were in jail together, Appellant told Douglas about a burglary which Appellant had committed, but that it was fifteen blocks away from Mrs. White's home.
In addition, Appellant asserts that there were exculpatory matters contained in the notes of Jan Price, a police investigator who testified out of the presence of the jury, relating to a change of jail records benefitting a State's witness and testimony about Mrs. White's car being at one location "all night." Appellant contends that the withheld information would have assisted him in cross-examining the State's witnesses, Booker Sterling, Don Davis and Alberta DeGrate.
A new trial should be pranted when the prosecutor negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense, even though not offered as evidence at the trial. See Means v. State, 429 S.W.2d 490, 494 (Tex.Crim.App.1968). The decision must be made on a case-by-case basis, and the standard to be applied is whether the evidence "may have had an effect on the outcome of the trial." Id.; Ham v. State, 760 S.W.2d 55, 58 (Tex.App.Amarillo 1988, no pet.). The mere possibility that the evidence might help the defense or otherwise affect the outcome of the trial does not establish its materiality in the sense necessary to merit reversal of the conviction; rather, when evaluated in the context of the entire record, the evidence must be such that disclosure would have "create[d] a reasonable doubt about the defendant's guilt that did not otherwise exist." Ham, 760 S.W.2d at 58 (citing *122 United States v. Agurs, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)); Butler v. State, 663 S.W.2d 492, 495 (Tex. App.Dallas 1983), affirmed, 736 S.W.2d 668 (Tex.Crim.App.1987).
Appellant vigorously cross-examined the State's witnesses about their truthfulness. Many of the State's witnesses were cross-examined about criminal charges that they had plea-bargained or which had been dismissed by the State. Witnesses admitted lying on other occasions. Appellant called Jan Price to testify out of the jury's presence. Booker Sterling was cross-examined extensively about who was with whom in what car on the night of the murder; who sold what property, where it was sold, and to whom it was sold; and what he overheard, when did he overhear it, and who was present. Ultimately the jury resolved the conflicting testimony and reached a verdict adverse to Appellant. From our review of the record, we do not believe that the disclosure of further information of the nature described by Appellant would have created a reasonable doubt about his guilt that did not otherwise exist or would have affected the outcome of the trial. See id.; Means, 429 S.W.2d at 494. Point ten is overruled.
We affirm the judgment.
NOTES
[1] Joe Sidney Williams was convicted of the murder of Juanita White and sentenced to life in prison. His conviction was affirmed by this court in Williams v. State, 815 S.W.2d 743 (Tex. App.Waco 1991, pet. filed).
[2] The comment to Rule 503 states: "This rule governs only the lawyer/client privilege. It does not restrict the scope of the work product doctrine." Tex.R.Crim.Evid. 503 at comment (Vernon 1991).
[3] Counsel will, of necessity, use notes, documents, and other internal materials which were prepared by himself or an investigator to adequately present his client's case, often relying on them to question witnesses. United States v. Nobles, 422 U.S. 225, 240 n. 14, 95 S.Ct. 2160, 2171 n. 14, 45 L.Ed.2d 141 (1975). Normally, a waiver would not result when the work product is so used. Id. But, when "counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." Id.
[4] We note that Rule 52(a) of the Rules of Appellate Procedure provides that "[i]n order to preserve a complaint for appellate review a party must have presented to the trial court a timely request, objection or motion,...." See Tex. R.App.P. 52(a). However, appellate courts are still saying: "The failure to object waives any error." The dilemma: How can any error have occurred when no one ever called anything to the court's attention?
[5] We could apply Rule 81(b)(2) if it stated that an appellate court shall reverse unless it determines beyond a reasonable doubt that the improper act occurring at trial or the error made no contribution to the conviction or to the punishment. But, because the rule just states "error," we cannot apply a harm analysis to improper jury argument until we determine that the court has made an adverse erroneous ruling.
[6] Some arguments, such as a direct comment on the failure of the defendant to testify, are so improper that an instruction cannot cure the prejudicial effects and a harmless-error analysis is unnecessary. See e.g., Bird v. State, 527 S.W.2d 891, 894 (Tex.Crim.App. 1975).