COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ADRIAN RODRIGUEZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
 §


 


§


 


§


 


§


 


§


 


 § 

No. 08-01-00103-CR



Appeal from the


243rd Judicial District Court

of El Paso County, Texas


(TC# 20000D04677)


M E M O R A N D U M O P I N I O N


 Appellant was charged with three counts of indecency with a child. One count was
indecency with a child by contact, and the other two were indecency with a child by
exposure. Appellant plead not guilty to all three counts. The jury found Appellant guilty of
indecency with a child on all counts and assessed a $10,000 fine and punishment of ten
years' imprisonment on each count, to run concurrently. We affirm the judgment of the trial
court.

 I. SUMMARY OF THE EVIDENCE


 The record shows that Appellant's wife, Veronica, and Maria de la Luz Munoz, the
child victim's mother, were raised together and had been close friends almost all of their
lives, and thought of each other as sisters. The Munoz's treated the Appellant and his wife
as in-laws, and they were almost like family. It was customary for Appellant and Veronica
to spend the night at the Munoz's home on several occasions. 

 Appellant was charged with three separate counts of indecency with a child, alleging
that on three different occasions while staying overnight at the Munoz home, he either
exposed himself or improperly touched Maria Munoz, a thirteen year old child. On February
6, 1999, Appellant and his wife were sleeping at the Munoz home watching the Munoz
children since Mr. and Mrs. Munoz had taken another one of their daughters to the hospital
for unrelated medical reasons. Appellant and his wife pulled two of the beds together in the
same bedroom where the Munoz children slept, so that they could sleep with the children. (1) 
Appellant slept in the same bed with his wife and the victim, Maria Munoz. Sometime
during the night, Appellant reached across the bed and put his hands down Maria's pants and
started to touch her. Appellant put his finger inside the young girl's vagina and touched her
breasts while lying in bed near her. In trying to get away and escape further touching, she
got out of the bed, but Appellant followed her. He followed her outside, pulled his pants
down in front of her and made her touch his penis. Appellant told her not to say anything and
if she did, no one would believe her. She later returned to bed and fell back asleep. The next
morning she found that the buttons on her shorts had been unfastened. 


 The second incident occurred a few months later, on July 7, 1999. At that time,
Appellant was once again staying with the Munoz family because his wife, Veronica, had
been taken to the hospital by the Munoz's to have their second child. The Munoz's stayed
at the hospital with Appellant's wife while she was having the baby while Appellant 
remained at the Munoz house to watch the children. That evening, he waited until everyone
went to bed and once again tried to touch Maria. Sometime during the night, Appellant woke
the child up, lowered his sweat pants, showed her his penis and tried to make her grab it. The
victim ran outside to flee from his advances and once again, Appellant followed her. He
pulled down his pants again to expose himself a second time. Maria went back inside later
on and returned to bed, where she later fell asleep. She was later awakened that night by the
Appellant, as he was trying to insert his finger into her vagina. Maria was not able to fall
back asleep until her parents returned from the hospital. 

 Maria Munoz testified that she did not reveal any information about these first two
encounters in which the Appellant touched her vagina, exposed himself, and attempted to
force her to grab his penis because she was afraid. However, on August 9, 2000, Appellant
was caught in the act by the Munoz family. On this occasion, Appellant waited until he
thought everyone had gone to sleep. Appellant began kicking Maria's bed to get her
attention and asked her to touch his penis. After refusing, Appellant left the room for a short
while and went outside. When he returned to the bedroom, he again made advances towards
Maria. Alberto, the victim's 18 year old brother, who also slept and shared the room with
Maria, and their two other siblings, was still awake and heard Appellant getting up. Alberto
saw the Appellant kicking his sister's bed, as he was trying to get her to look at him. (2) 
Alberto then watched Appellant approach his sister's bed and whisper something into her ear.
Alberto saw Appellant remove his shorts and underwear and proceed to try and get into the
bed with his sister. Appellant tried to make Maria touch his penis. Appellant was sitting on
the edge of Maria's bed, when the victim's brother asked the Appellant what he was doing.
Appellant immediately pulled his underwear back on after he realized that Alberto had
observed his actions and jumped back into his bed. Alberto turned the lights on in the room
and immediately went to wake up his parents in the other room. They all came running back
into the room. When Maria's parents entered the room they found the Appellant in his bed
underneath the blankets, laughing and they saw their daughter in her bed tangled up in the
blankets crying. Maria's mother and father both saw Appellant's shorts, which he had worn
to bed that night, lying on the floor next to the young girl's bed. 

 Once Appellant was caught, Maria revealed to her parents what had previously been
happening. After realizing what had occurred and listening to Alberto's story, Maria's father
threw the Appellant out of his house. Mr. Munoz tried to calm Appellant's wife who was
also staying at their home on this occasion. The police were called and Appellant was later
charged with three counts of Indecency with a Child; one count involving contact with the
child's genitals and two counts involving the Appellant exposing his genitals to the child. II. DISCUSSION

 In Appellant's sole issue on review, he contends claims that the trial court erred in
denying his motion for mistrial during the State's closing argument because the State
engaged in prosecutorial misconduct. Specifically, Appellant asserts that the cumulative
effect of the State mentioning the word "rape" during the trial was to inflame the minds of
the jurors and to deny him a fair trial. The State counters by suggesting that Appellant has
waived error by failing to properly object at trial.

A. Standard of Review

 The denial of a motion of mistrial is reviewed under an abuse of discretion standard. 
Trevino v. State, 991 S.W.2d 849, 850 (Tex. Crim. App. 1999), State v. Gonzalez, 855
S.W.2d 692, 696 (Tex. Crim. App. 1993). To establish an abuse of discretion, the defendant
must show he suffered actual prejudice from the denial of his motion. Vasquez v. State, 67
S.W.3d 229, 240 (Tex. Crim. App. 2002); Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim.
App. 2000). The decision to grant a mistrial is left to the discretion of the trial court. Ladd
v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); cert. denied, 529 U.S. 1070, 120 S.Ct.
1680, 146 L.Ed.2d 487, 68 USLW (2000). The asking of an improper question will seldom
call for a mistrial because, in most cases, any harm can be cured by an instruction to
disregard. Id.; (citing Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex. Crim. App. 1990)). 
We look at the facts of the case to determine whether a given error necessitates a mistrial. 
Id. A mistrial is required only when the improper question or statements are clearly
prejudicial to the defendant and is of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors. Id.; Hardin v. State, 20
S.W.3d 84, 93-94 (Tex. App.--Texarkana 2000, pet. ref'd)(summarizing factors in
determining cure). We presume the jury followed a trial court's prompt admonishment to
disregard improper evidence. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).

B. Prosecutorial Misconduct 

 We note once again that Appellant was charged with the offense of Indecency with
a Child. While the young victim was thirteen years old at the time of the first incident,
Appellant was never charged with sexual assault or aggravated sexual assault. (3) The State
suggests that while it did make reference to the offense as a "rape," Appellant has waived any
error by lodging a general objection rather than an objection premised on prosecutorial
misconduct. The State also asserts that while Appellant is not charged with sexual assault,
the jury should be entitled to consider the term "rape" in a broader sense, since the term is
not statutorily defined. Even if a narrow definition were to be applied, there would need to
be penetration to constitute "rape." The State contends that the evidence satisfied the
definition insofar as Appellant was found to have penetrated the child's vagina with his
finger on multiple occasions. Thus we must determine whether use of the word "rape"
constituted prosecutorial misconduct. 

 Prosecutorial misconduct exists where (1) the prosecutor deliberately violated an
express court order; (2) the misconduct was so blatant as to border on being insubordinate;
or (3) a prosecutor's question was so clearly calculated to inflame the minds of the jury that
an instruction to disregard cannot cure the harm. See Stahl v. State, 749 S.W.2d 826, 831
(Tex. Crim. App. 1988); Perkins v. State, 902 S.W.2d 88, 96 (Tex. App.--El Paso 1995, pet.
ref'd). Claims of prosecutorial misconduct are determined on a case by case basis. Stahl, 749
S.W.2d at 830, Perkins, 902 S.W.2d at 96. We not only look at the facts of each case, but
also consider the probable effect on the jurors' minds. Haddad v. State, 860 S.W.2d 947, 954
(Tex. App.--Dallas 1993, writ ref'd), citing Hodge v. State, 488 S.W.2d 779, 781-82 (Tex.
Crim. App. 1973)).

 During the duration of the trial in both cross examination and closing arguments the
State, on five different occasions, made references to the Appellant as having "raped" the
complainant. Each time Appellant objected, asked for a limiting instruction, and moved for
mistrial. The court denied every motion for mistrial, but did instruct the jury, each time, to
disregard the questions or statements made by the State involving the word "rape." There
was no order restricting the State in that regard, nor do we find the conduct, as described, to
be so blatant as to border on being insubordinate; we must determine whether the
prosecutor's question was so clearly calculated to inflame the minds of the jury that an
instruction to disregard cannot cure the harm.

C. Preservation of Error

 We first turn to the question whether error for review has been properly preserved. 
To preserve error for alleged prosecutorial misconduct, Appellant must have (1) objected on
specific grounds, (2) requested an instruction that the jury disregard that comment, and (3)
moved for a mistrial. Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); see
Huffman v. State, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988). The record must reflect that
a complaint was made to the trial court by a timely request or objection which was ruled upon
by the judge. Tex. R. App. P. § 33.1(a) (Vernon Supp. 2002). An exception exists when
prosecutorial argument is so prejudicial that an instruction to disregard the argument could
not cure the harm. Harris v. State, 784 S.W.2d 5, 12 (Tex. Crim. App. 1989), cert. denied,
494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). In such an instance, neither a
timely objection nor an adverse ruling is required to preserve error for review. Id. The
Court's have previously characterized this exception as applying to an argument as clearly
calculated to inflame the minds of the jurors and of such character as to suggest the
impossibility of withdrawing the impression produced on the juror's mind. Rodriguez v.
State, 646 S.W.2d 539, 543 (Tex. App.--Houston [1st Dist.] 1982, no pet.).

 Appellant contends the question was out of line and that it was prejudicial. Appellant
asserts that the question was clearly calculated to inflame the minds of the jury. In making
this argument, however, he offers no authority to support his contention and fails to show that
jury was prejudiced by these references. Generally, any error in asking an improper question
is cured or rendered harmless by an instruction to disregard. Guzman v. State, 697 S.W.2d
404, 408 (Tex. Crim. App. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d
734 (1986). Appellate courts rarely reverse a conviction due to an improper prosecutorial
question. Gonzales v. State, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985), cert. denied, 472
U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). To trigger reversal, the question must
be obviously harmful to the defendant. Ransom v. State, 789 S.W.2d 572, 585 (Tex. Crim.
App. 1989), cert. denied, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). We note
that only a few instances of improper argument by the State, with the trial court's curative
instruction to disregard, does not amount to reversible error. See Tex. R. App. P. 44.2(b);
Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000)(court's instruction
presumptively cures error); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998),
cert. denied, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999)(error not affecting
substantial right is disregarded). In the vast majority of cases in which argument is made or
testimony comes in, deliberately or inadvertently, which has no relevance to any material
issue in the case and carries with it some definite potential for prejudice to the accused, the
Texas Criminal Court of Appeals has relied upon what amounts to an appellate presumption
that an instruction to disregard the evidence will be obeyed by the jury. Waldo v. State, 746
S.W.2d 750, 753 (Tex. Crim. App. 1988, pet. denied), Thompson v. State, 612 S.W.2d 925
(Tex. Crim. App. 1981); see 1 R. Ray, Texas Practice, Law of Evidence, § 29 (3rd ed. 1980). 
The Criminal Court of Appeals found that, "[i]n essence this court puts its faith in the jury's
ability, upon instruction, consciously to disregard the potential for prejudice, and then
consciously to discount the prejudice, if any, in its deliberations." Waldo, 746 S.W.2d at 753.

 Although a general objection will preserve error when the error is obvious from the
surrounding context, courts have consistently held that the point of error must correspond to
the objection made at trial. Carmona v. State, 941 S.W.2d 949, 957 (Tex. Crim. App. 1997);
see Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991)(to preserve an issue for
appellate review, the point of error must at least minimally comport with the objection at
trial.); Long v. State, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990)(while a specific objection
is usually required to preserve error, a general objection will suffice if the complaint is
obvious from the surrounding context.); and, Zillender v. State, 557 S.W.2d 515, 517 (Tex.
Crim. App. 1977)(a specific objection is required to preserve error in most cases, but a
general objection will suffice when the objection is clear from surrounding context.).
Regarding specificity, a party must "let the trial judge know what he wants, why he thinks
himself entitled to it, and to do so clearly enough for the judge to understand him at a time
when the court is in a proper position to do something about it." Lankston v. State, 827
S.W.2d 907, 909 (Tex. Crim. App. 1992, pet. denied).

 In the instant case, the State indicates on appeal that Appellant never objected both
to the fact that the State used the word "rape" and at the same time also claimed with any
specificity that the State was engaging in prosecutorial misconduct. Nor did Appellant assert
in any way that the State's acts were clearly calculated to inflame the minds of the jurors and
was of such character so as to suggest the impossibility of withdrawing the impression
produced. We agree.

 In Perkins v. State, this Court reviewed those portions of a record wherein the
Appellant complained of conduct which occurred at trial, and found that, while Appellant
occasionally objected on various other grounds, he did not specifically object on the basis of
prosecutorial misconduct, except on three instances. Perkins v. State, 902 S.W.2d 88, 96
(Tex. App.--El Paso 1995, pet. ref'd). In that case this Court concluded that Appellant's
failure to object to the remainder waived the asserted error. Id. Similar to Perkins, here the
Appellant does not point to any place in the record in which it is affirmatively shown that the
court had instructed the prosecutor to not raise this matter before the jury. Id. Our review
of the appellate record does not reveal that such an instruction had been given. Id. Here, as
in Perkins, there is no evidence that the question or statement was clearly calculated to
inflame the minds of the jury nor do we find, given the circumstances, that it was of such a
character so as to suggest the impossibility of withdrawing the impression produced. Id. at
96-97. Here, as previously held in Perkins, we find that the Appellant waived his objection
for review on appeal. However, our analysis does not end there.

D. Did the Instruction Cure the Prejudice?

 While Appellant wholly failed to properly object, but rather simply objected to the
State's use of the word "rape", we note that the trial court did sustained Appellant's objection
and further admonished jury, every time, to disregard the last statement or question by the
State that referred to the inference of "rape". A prompt instruction to disregard will generally
cure error. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)(even when a witness
gives an improper answer regarding extraneous offenses.). An instruction to disregard will
be presumed effective unless the facts of the case suggest the impossibility of removing the
impression produced on the minds of the jury. The effectiveness of a curative instruction is
determined on a case-by-case basis. See Veteto v. State, 8 S.W.3d 805, 811 (Tex. App.--Waco 2000, pet. ref'd); Fletcher v. State, 852 S.W.2d 271, 275 (Tex. App.--Dallas 1993, pet.
ref'd). If the instruction given can be said to have removed the prejudicial effect of the
improper comment, no error results from the overruling of a motion for mistrial. Washington
v. State, 822 S.W.2d 110, 118 (Tex. App.--Waco 1991), rev'd on other grounds, 856 S.W.2d
184 (Tex. Crim. App. 1993); see Long, 823 S.W.2d at 267. Mistrials should be granted only
when an objectionable event is so emotionally inflammatory that curative instructions are not
likely to prevent the jury from being unfairly prejudiced against the defendant. See Bauder
v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). Furthermore, because curative
instructions are presumed efficacious to withdraw objectionable arguments or evidence from
jury consideration, trial conditions must be extreme before a mistrial is warranted. See id.
at 700; Waldo, 746 S.W.2d at 754.

 Even though the motion for mistrial was denied by the trial court, we must still
examine the improper comment to determine if it represents harmful error. Reviewing error
pursuant to the harmless error rule and efficacy of curative instructions, we look at the
following factors: (1) the nature of the error; (2) the persistence of the prosecution in
committing the error; (3) the flagrancy of the violation; (4) the particular instruction given;
(5) the weight of incriminating evidence; and (6) the harm to the accused as measured by
severity of the sentence. See Waldo, 746 S.W.2d at 754. Guided by the above factors, and
any other considerations suggested by the facts of the case, the error and all its effects must
be isolated. Harris, 790 S.W.2d at 588; Laca v. State, 893 S.W.2d 171, 184 (Tex. App.--El
Paso 1995, pet. ref'd). The determination then is whether a rational trier of fact might have
reached a different result if the error and its effects had not resulted. Id. 

 Applying the factors to this case, we find that although the State's may have argued
outside the record in making reference to the word "rape," the trial court immediately
sustained Appellant's objections and admonished the jury to disregard. Further, we find that
the State presented ample testimony from both the child victim and her brother Alberto
Munoz sufficient to convict Appellant and that Appellant's testimony in his defense was at
best self-serving. Further, while the jury had the option of sentencing defendant within the
range of punishment of between two to twenty years' confinement, Appellant was sentenced
to ten years confinement. Laca, 893 S.W.2d at 184. After weighing these factors, we cannot
say trial conditions had become so extreme as to warrant a mistrial. Examined in light of this
standard, we believe the error, even if not waived, would be harmless. Laca, 893 S.W.2d at
184. We find that there was no preservation of error, and that the trial court did not abuse
its discretion in denying Appellant's request for a mistrial. Appellant's sole issue is
overruled. Having overruled Appellant's sole issue on review, we affirm the judgment of the trial
court.

February 10, 2004



 RICHARD BARAJAS, Chief Justice




Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. The house was described as a two-room house. Maria's parents slept in one room with their two youngest
children and the four other children slept in the adjoining room, where Appellant and his wife often stayed. 
2. He could see what the Appellant was doing because the room was illuminated by a light outside the
house. 
3. A person commits the offense of indecency with a child if that person (1) knowingly or intentionally, (2)
engages in sexual contact, (3) with a child, (4) younger than seventeen years of age, (5) who is not the spouse of the
accused. Tex. Pen. Code Ann. §§ 21.11(a)(1), (a)(2)(Vernon Supp. 2002); Hill v. State, 852 S.W.2d 769, 771
(Tex. App.--Fort Worth 1993, pet. ref'd). A person also commits the offense if they engage in sexual contact with
the child or cause the child to engage in sexual contact; or expose any part of the person's genitals, knowing the child
is present. See Tex. Pen. Code Ann. § 21.11(a)(1), (a)(2), (a)(2)(A) [Emphasis added]. The Penal Code defines
"sexual contact" as "any touching of the anus, breast, or any part of the genitals of another person with intent to
arouse and gratify the sexual desire of any person." Tex. Pen. Code Ann. § 21.01(2) (West 1994). The culpable
mental state for this offense is specific intent to arouse and gratify sexual desire. Washington v. State, 930 S.W.2d
695, 698 (Tex. App.--El Paso 1996, no pet.).