Stephanie Ann KREBSBACH, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–97–0075–CR.

Court of Appeals of Texas,
Amarillo.

Feb. 27, 1998.

Rehearing Overruled April 7, 1998.

(Bonnie C. Ericson), Law Offices of Bonnie C. Ericson, Seminole, for appellant.

(Richard Clark), Yoakum Criminal District Attorney, Plains, for appellee.

Before DODSON and QUINN and REAVIS, JJ.

QUINN, Justice.

Stephanie Ann Krebsbach, appellant, appeals from a judgment convicting her of arson. Her two points of error involve the court's refusal to quash the indictment and the sufficiency of the evidence underlying her conviction. We affirm.

### Background

The record discloses that appellant resided with her family in a house. The home was owned by the Jorde Farms Corporation, and located approximately seven miles outside of Denver City. On the day in question, appellant's husband had left for a trip to Lubbock. Similarly, appellant and the other family members departed. However, after working at a local general store for several hours, appellant returned home. According to her testimony, she saw the reflection of a vehicle that was allegedly leaving the area and noticed that the barn door was open. After exiting her vehicle, she entered the home through its back door. According to appellant, smoke was seen coming from a bathroom located to her right, and this inspired her to phone 911 and then exit through the front door.

Fire personnel arrived at the scene within ten minutes of appellant's call. By that time, the blaze had engulfed much of the area around the front door and was proceeding down the porch steps. Various firemen considered this odd since they knew that fire naturally burned up and out, but to burn the steps as it did, the fire burned down as if it were following a trail. Additionally, upon their entering the home, firefighters saw towels on the floor placed in a manner suggesting that they were to be used as "trailers." In the vernacular of those who investigate fires and their causes, "trailers" are "fuel that is strewn from one area to another designed to promote fire spread." The fuel could consist of things that burn such as

"twisted up newspapers, flammable liquid poured from one area to another[,]" or towels.

Eventually, the fire was extinguished and investigators were called in to investigate its circumstances. One came with a dog trained to detect flammable liquids. Such were detected by the animal in various areas but especially around a hole inside the home and next to the front door. Furthermore, the testing of samples taken from the scene indicated the presence of alkanes (markers used in petroleum products and sometimes found in gasoline). A gasoline can was also found in the rubble near the hole as were traces of gasoline in a nearby sealed antique milk container.

### Point of Error One

Under point one, the validity of the court's refusal to quash the indictment is questioned. Through the indictment, the State alleged, in pertinent part, that appellant

> did then and there with intent to damage and destroy a habitation ... intentionally and knowingly start a fire to, or cause an explosion in, said habitation by using flammable accelerants to start an incendiary fire, knowing that said habitation and its contents were insured against damage and destruction, and/or knowing that said habitation was located on property belonging to another to-wit: Jorde Farms, a Texas Corporation[.]

So worded, the indictment was defective in two respects, according to appellant. First, the particular "flammable accelerant" used in starting the fire was not mentioned, and because it was not, the State purportedly failed to allege the manner and means of the crime. Second, elements of the crime were charged in the conjunctive *and* disjunctive, and in so pleading the offense, the State failed to "distinguish the conduct of the accused." We find no error and therefore overrule the point.

#### A. Allegation of the Manner and Means

As to the matter of naming the flammable accelerant, we note that an indictment must set forth, in plain and intelligible language, sufficient information to enable the accused to prepare his defense. *Castillo v. State*, 689 S.W.2d 443, 447 (Tex.Crim.App. 1984) (en banc). So too do we recognize that in affording an accused that information, the manner in which the criminal act occurred must be alleged. *Id.* Furthermore, when the crime charged is arson, the latter rule obligates the State to aver the manner in which the fire was started or explosion caused. *Id.* at 449. Yet, this does not bind the State to also allege, within the indictment, the evidence upon which it intends to rely in proving that offense. *Swope v. State*, 805 S.W.2d 442, 444–45 (Tex.Crim.App.1991) (en banc); *Phillips v. State*, 597 S.W.2d 929, 935 (Tex. Crim.App. [Panel Op.] 1980).

Here, appellant was formally charged with setting a fire to or causing an explosion in an habitation. Furthermore, the fire was set, or explosion was allegedly caused by appellant "using flammable accelerants." This was a sufficient averment of the manner and means by which the crime was committed. *Baugh v. State*, 725 S.W.2d 450, 454 (Tex.App.—Austin 1987), *rev'd on other grounds*, 776 S.W.2d 583 (Tex.Crim.App.1989) (en banc) (holding the manner and means to be sufficiently alleged since the indictment revealed that the fire was started "by use of a flammable liquid"). The State need not have included a description of the particular accelerant used for that would have been tantamount to alleging an evidentiary matter.[1] *Id.*

#### B. Use of "And/Or"

As to the matter of using the phrase "and/or" in the indictment, we note that at one time, such was objectionable. *See Compton v. State*, 129 Tex.Crim. 648, 91 S.W.2d 732, 733 (1936) (believing the term "and/or" indicative of "confused thought" and without place in "either a statute or legal document").

---

1. *Castillo v. State*, 689 S.W.2d 443 (Tex.Crim. App.1984) (en banc), a case cited by appellant, does not urge a different result. Though the indictment was there held defective, the court reached that conclusion because no manner and means whatsoever were averred. *Id.* at 447–49. Instead, the indictment merely read that a fire was set. Nothing was said about how it was set, such as by flammable liquids or accelerants. Here, we have the missing allegation.

That no longer is true. According to more recent precedent of the Texas Court of Criminal Appeals, complaining of the use of "and/or" is hyper technical and akin to "'tilting ... lances at windmills.'" *Ex parte Slaton,* 484 S.W.2d 102, 106–107 (Tex.Crim.App. 1972), *quoting Willis Sears Trucking Co. v. Pate,* 452 S.W.2d 782 (Tex.Civ.App.—Beaumont 1970, no writ). Similarly, courts from neighboring jurisdictions have upheld utilization of the term, though generally recommending against it. *State v. Getty Oil Co.,* 305 A.2d 327, 332 (Del.Super.Ct.1973); *Boggs v. Commonwealth,* 285 Ky. 558, 148 S.W.2d 703, 704 (1941). Indeed, one has approved of the practice so long as its use does not result in uncertainty. *State v. Getty Oil Co.,* 305 A.2d at 332.

■ We further note that ofttimes a criminal statute prescribes different ways in which one can commit a particular crime. For instance, one may commit arson by starting a fire with intent to destroy or damage 1) any vegetation, fence, or structure on open-space land, *or* 2) any building, habitation, *or* vehicle knowing that it is within the limits of an incorporated city, *or* is insured against damage, *or* is subject to a mortgage or other security interest, *or* is located on property belonging to another, *or* knowing that it has located within it property of another, *or* when the actor is reckless about whether the burning will endanger someone's life or property. TEX. PEN.CODE ANN. § 28.02(a) (Vernon 1994). And, when such alternative ways exist, it is incumbent upon the State to allege the particular alternative it accuses the defendant of performing. *Saathoff v. State,* 891 S.W.2d 264, 266 (Tex.Crim.App.1994) (en banc); *Ferguson v. State,* 622 S.W.2d 846, 851 (Tex.Crim.App. [Panel Op.] 1980). Yet, it need not mention all the alternatives. Nor is it restricted to averring only one. Instead, several may be alleged. And in alleging them, the State may tie them together through the conjunctive word "and," *Eastep v. State,* 941 S.W.2d 130, 133 (Tex.Crim.App. 1997) (en banc); *Rogers v. State,* 774 S.W.2d 247, 251 (Tex.Crim.App.) (en banc), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), or the disjunctive word "or." *Hunter v. State,* 576 S.W.2d 395, 399 (Tex.Crim.App. [Panel Op.] 1979).

■ Nevertheless, in either situation, a conviction may lawfully be had through proof of only one or the other alternatives, irrespective of whether they were joined through the conjunctive or disjunctive. *Rogers v. State,* 774 S.W.2d at 251 (holding that though a crime may be alleged in the conjunctive, proof of one or the other of the conjoined acts was enough to support conviction). For instance, in reference to arson, the indictment may read that the accused set the particular fire with intent to destroy vegetation *and* a building while knowing that the building lay within city limits. Or, the defendant could permissibly be accused of setting the fire with the intent to destroy vegetation *or* a building while knowing that the building lay within city limits. Regardless of what tack was chosen, the State could win a conviction by simply proving that the fire was set with the intent to destroy vegetation *or* a building. Finally, because of this, and the view, as illustrated in *Ex parte Slaton,* that complaints against the use of "and/or" are hyper technical, and the implicit acknowledgment in *Ex parte Slaton* that the English language is hardly static, we find nothing wrong with the use of the term here.

Simply put, the State combined, in one sentence, two ways in which it could have lawfully charged appellant with arson. By doing so, it placed her on notice that it was going to prove one of two things. Either it would establish that she intentionally set fire to her habitation 1) knowing that it and "its contents were insured against damage and destruction" *and* knowing that it "was located on property belonging to another to-wit: Jorde Farms, a Texas Corporation" or 2) knowing that the habitation and "its contents were insured against damage and destruction" *or* knowing that it "was located on property belonging to another to-wit: Jorde Farms, a Texas Corporation[.]" And again, regardless of whether the crime was alleged in the conjunctive or disjunctive, the law clearly allowed the State to treat it as if alleged in the disjunctive and obtain a conviction through proof of one alternative or the other (that is, that she set the fire knowing that the home and its contents were insured

*or* knowing that it was located on the property of another). *Eastep v. State, supra; Rogers v. State, supra.* In other words, the indictment specified in plain, intelligible language the alternative means by which appellant allegedly committed arson, and in doing so, afforded the accused sufficient information to enable her to prepare a defense, despite the incorporation of "and/or."

### Point of Error Two

Appellant's second and last point is divided into various subparts. Via those subparts, she attacks both the legal and factual sufficiency of the evidence. That is, it is first contended that the evidence was insufficient to prove motive. Then, she raises the specter of the State failing to prove that a flammable accelerant was used or that the building and its contents were insured. Finally, she questions the sufficiency of the evidence illustrating that she, as opposed to someone else, committed the crime. We overrule the point.

#### A. Standard of Review

In determining whether a verdict enjoys the support of legally sufficient evidence, one reviews the evidence in the light most favorable to the prosecution and asks if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt based on that evidence. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App. 1995) (en banc); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If the answer is yes, then the verdict is supported by legally sufficient evidence.

However, in assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996) (en banc). In other words, the verdict must "shock[ ] the conscience" and "clearly demonstrate[ ] bias" before we may sustain a factual sufficiency attack. *Id.* at 135.

Finally, and regardless of which standard is utilized, it remains axiomatic that we defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from the evidence, to resolve credibility issues, and to determine who to believe or disbelieve is not ours but the jury's. *Depauw v. State,* 658 S.W.2d 628, 633–34 (Tex. App.—Amarillo 1983, pet. ref'd).

#### B. Application of Standard

##### 1. Motive and Existence of Insurance

As to the matter of proving motive, we note that same is not an element of a crime. *Winn v. State,* 937 S.W.2d 124, 128 (Tex.App.—Amarillo 1996, no pet.). So, it does not matter whether or not the State proved motive. Nevertheless, evidence appears of record indicating that appellant's husband had not been paid for several weeks before the fire. So too did appellant inform an investigator that she and her husband's "financial situation was very serious" and that they were receiving food stamps. Moreover, one witness testified that the contents of the home were insured and that the claim of loss filed with the insurance company was excessive, given the size of the house and amount of property it could have held. Thus, while the State need not have proved motive, evidence of motive for setting the fire was presented, that motive being appellant's need for money.

As to the matter of proof regarding the existence of insurance on *both* the house and its contents, the State did allege via the indictment that the fire was set by appellant while "knowing that said habitation and its contents were insured against damage and destruction." Yet, that particular means of establishing arson was never submitted to the jurors. Instead, they were asked merely to determine whether appellant set fire to the house while knowing it was located on the property of another. So, the State's purported failure to prove that the *house* was also insured mattered not.

##### 2. Use of Flammable Accelerant

As to the use of a flammable accelerant, we see that Richard Beals, an investiga-

tor with the State Fire Marshall's office, expressly testified that the fire was "intentionally set" with "[s]ome type of flammable liquid ... [p]robably gasoline." His opinion was based upon his observation of the aftermath left by the fire.

> [T]he low burn, the hole burned in the floor, the floor joists charred all the way through ... the sample that came back positive for gasoline that was taken several feet away from the hole, the gasoline can that was found in the area of origin at the top of the debris, and the hole ... would all be things that led to my conclusion[,]

so he said. Furthermore, the manner in which the porch burned also indicated the use of a flammable liquid. Apparently, the fire went down the steps and under the porch. "[S]ince fire burns up and out, that indicates to me that there is some type of fuel load on the steps and below the porch, which would be typical of a flammable liquid dripping through and then burning from the ground up[,]" he continued.

Similarly, a dog trained in detecting the presence of flammable liquids was brought to the scene. It was allowed to roam outside and inside the burned house. Though the dog did not alert to the presence of any such liquids outside the home, it did in the inside. According to the testimony of its handler, the animal strongly alerted in and around the large burned-out hole near the front door which led out to the porch, and that hole was thought to be the point of the fire's origin, according to other witnesses. And, while the testing of samples taken from the hole and ground below it failed to uncover the actual residue of a flammable liquid, one investigator was not dissuaded by this. He opined that the accelerant may well have been totally consumed by the fire. Finally, an empty gas can was found among the debris by the hole, gas was found upon items of "tack" discovered in a sealed milk container adjacent to the hole, and alkanes were discovered elsewhere in the house.

The dog handler next opined that the fire was intentionally set. He concluded that "a person intentionally placed a flammable liquid on the floor in th[e] general area [of the hole], and by what ever means ignited that

liquid causing the fire which spread quickly to the roof area in that area."

Admittedly, the foregoing does not indisputably establish the presence of a flammable accelerant. Nevertheless, it constitutes some evidence that such a liquid was used. Moreover, the contradictory evidence was not such as to overwhelm the jury's implicit finding that a flammable accelerant was utilized.

### 3. Commission by Appellant

■ Regarding appellant's identity as the arsonist, the evidence indicates that 1) the fire was incendiary or intentionally set and 2) appellant herself believed that arson was involved, was alone at the scene when she reported the blaze, suffered from smoke inhalation (even though she was in the house by her own account for a very brief period), had soot on parts of her body, had motive for setting the fire as mentioned above, and filed an excessive insurance claim. So too does the record contain evidence that the home was locked when its inhabitants left earlier that day and that no one had forced their way into it prior to appellant's return.

Furthermore, the stories relayed by appellant either contradicted themselves or where contradicted by other evidence. Regarding the manner in which she discovered and reported the fire, appellant told some that she entered the home through the back door, smelled smoke, went to a nearby barn to use a phone, discovered the phone was inoperative, re-entered the home through its backdoor, called 911 on kitchen phone, and then exited through the front door. To others, she left out all mention of first going to the barn; they were told that she entered, noticed smoke, proceeded to use the kitchen phone, and then left through the front door.

Regarding the presence of others who she wanted the jury to believe set the fire, appellant told one person that "she saw what she believed was a vehicle reflection off a vehicle window, some type of vehicle down around on the highway near her residence ... [but] wasn't really able to describe the vehicle ... [since] she wasn't sure really what it looked like." Another was told by appellant that the vehicle which she could not previously

describe was actually a light colored truck. Yet, one other witness who appellant had contacted immediately after reporting the fire testified to having driven by the house shortly before the fire was reported. And, according to that witness there were no vehicles at the house.

Regarding the fire's inception, appellant apparently wanted the jurors to believe that it had started in the bathroom, since that was the only place where she saw fire prior to calling 911. Yet, of those experts who testified about the fire's origin, all but one said it began near the front door. And, of the one who testified otherwise, he opined that it started in the kitchen. In effect, no one confirmed her story about the origination point. Moreover, investigators testified that had she actually left through the front door, as she told others, she would have had to encounter flames sufficient to inflict burns upon her body and clothing. Yet, witnesses noticed that she was unscathed, save for coughing from smoke inhalation.

■■■ Authority indicates that neither motive, *Hall v. State*, 155 Tex.Crim. 235, 233 S.W.2d 582, 583 (1950), nor presence at the scene, *Machado v. State*, 753 S.W.2d 252, 254 (Tex.App.—Houston [1st Dist.] 1988, no pet.), alone prove that a defendant committed arson. Yet, motive is a factor to consider, *Hall v. State*, 233 S.W.2d at 583, as is presence. And here we have both plus evidence of a fire intentionally set through the use of a flammable accelerant, of appellant's opportunity to set that fire, of appellant's fabrication of stories about the fire and her discovery and reporting of same, and of her submission of an excessive insurance claim after the fire. Admittedly, this is not direct evidence implicating her. Nevertheless, and unlike the movies and on television, circumstantial evidence can be used to convict one of arson. *Miller v. State*, 566 S.W.2d 614, 617 (Tex. Crim.App. [Panel Op.] 1978). And, we conclude that the circumstantial evidence here involved was legally sufficient to enable a jury to rationally conclude, beyond reasonable doubt, that appellant committed arson.

Similarly, we are able to say that when tested against the entire record, the evidence supporting the verdict was adequate to insulate it against claims of factual insufficiency. To say the least, very little about anything went undisputed. Indeed, appellant's counsel did an admirable job of interjecting question into most every witness' testimony. Nevertheless, under our system of justice, the jury was obligated to resolve those questions. More importantly, we must accord deference to the manner in which they were resolved, unless we can say that the result was clearly wrong or unjust. Here, we cannot say that, given the entire record, the jury's verdict declaring that appellant committed arson was unjust or clearly wrong.

Accordingly, we affirm the judgment.