Justin Wayne Carlock v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-174-CR

     JUSTIN WAYNE CARLOCK,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 220th District Court
Bosque County, Texas
Trial Court # 98-03-13045 BCCR
                                                                                                                

O P I N I O N
                                                                                                                

      In the middle of the night, in Cranfills Gap, Justin Wayne Carlock and a juvenile entered a
home in search of items to steal and sell so they could buy drugs. The resident, a 95 year old
man, was home. The assailants alternated holding the victim while the other searched the home. 
On May 20, 1998, Carlock was convicted by a jury of burglary of a habitation, a first degree
felony, and sentenced to twenty years in prison. He brings eight issues on appeal. We will affirm
his conviction.
FACTS
      On the night of January 3, 1998, Carlock and four other individuals, three being juveniles,
decided to burglarize some homes in Cranfills Gap, Bosque County, Texas. The grand mother,
great-grand mother and other relatives of one of the juveniles lived in Cranfills Gap, and
apparently, the town had no local police department. The boys’ original purpose in the burglary
plan was to steal items to sell and to ultimately buy drugs.
      They initially attempted to gain entry to one house through the back door. However, because
the door slammed and the resident awoke, the boys left for fear of being caught. Carlock and a
juvenile were then directed by the others toward the house of Ruben Tindell, a 95 year old man
who lived alone. Before entering the house through the back door, the juvenile decided to cut
Tindell’s telephone line so that they could escape, if necessary, before Tindell could call the
authorities. 
      Carlock and the juvenile entered Tindell’s house and made their way to a bedroom where they
located and stole some jewelry. They then found another bedroom, turned on the light, and
discovered Tindell, asleep on the bed. Carlock put a pillow over Tindell’s head and held him
down by the wrists while the juvenile looked for more items to steal. The juvenile also held
Tindell down while Carlock searched the house. After taking jewelry, knives and a shotgun,
Carlock tied the bedroom door shut with a leather belt. The juvenile suggested stealing Tindell’s
car, and Carlock drove. He ultimately crashed the vehicle a few blocks from his father’s house
in Cleburne after being chased by a deputy with the Johnson County Sheriff’s Office and a police
officer from the Rio Vista Police Department. The two ran and were later apprehended at
Carlock’s father’s house.
      Ruben Tindell testified that he was awakened by a noise and the light of a flashlight on the
night of January 3, 1998. A rubber mat, coupled with a pillow, was thrown over his head, and
his arms were grabbed and held. He could hardly breathe and told his assailant such. Tindell
worked one hand free and used it to create enough space between his face and the rubber mat so
he could breathe. His other arm was used by the attacker to strike Tindell in the head and
shoulder while being ordered to reveal the location of his money and guns. Both arms were
bruised and his jaw was sore as a result of this incident. Tindell was helpless and in fear of his
life.
      When the intruders left, Tindell laid in his bed until he heard his car start. He put on a pair
of shoes and trousers to go and call 911, but found that his door had been tied shut with a belt. 
He was able to break the belt. Tindell went to the telephone and discovered the line had been cut. 
He then walked to a neighbor’s house to call the Bosque County Sheriff’s Office.
MOTION TO QUASH
      In his first issue brought before this Court, Carlock contends that the trial court erred in
overruling his motion to quash the indictment filed against him. Carlock urged at a hearing before
the trial court that the indictment was so vague that it failed to give him notice as to what offense
was charged and that it was duplicitous. After arguments by both parties, the motion was
overruled. 
Vague Indictment
      In relevant part, the indictment charged:
...Justin Wayne Carlock...did then and there, with intent to commit a felony, to wit:
robbery, intentionally and knowingly enter a habitation, without the effective consent of
Ruben A. Tindall [sic], the owner thereof, and did commit or attempt to commit a felony
offense of robbery, or aggravated robbery, or aggravated assault, or injury to an elderly
or disabled individual....

In this one paragraph, Carlock was charged with burglary of a habitation with the intent to commit
a felony offense, that being robbery. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 1994). The
paragraph also charged Carlock with burglary of a habitation by committing or attempting to
commit a felony offense. Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 1994). The felony the
State alleged Carlock committed or attempted to commit was either robbery, or aggravated
robbery, or aggravated assault, or injury to an elderly or disabled person. An offense under
section 30.02(a)(1) or (3) is classified as a first degree felony if any of the additional felonies
alleged are not felony theft. Tex. Penal Code Ann. § 30.02(d) (Vernon Supp. 1999).
      Carlock believes the indictment to be unduly vague because the various felonies he is alleged
to have committed or attempted to commit while entering the habitation without Tindell’s consent
were charged disjunctively. It has long been held that where there are several ways or means by
which an offense may be committed set forth in the same statute, and those ways or means are
subject to the same punishment, they may be charged conjunctively in one paragraph. Eastep v.
State, 941 S.W.2d 130, 133 (Tex. Crim. App. 1997); Schwenk v. State, 733 S.W.2d 142, 149
(Tex. Crim. App. 1981); Sidney v. State, 560 S.W.2d 679, 681 (Tex. Crim. App. 1978); Garcia
v. State, 537 S.W.2d 930, 932 (Tex. Crim. App. 1976). The alternative means may also be
charged disjunctively. Hunter v. State, 576 S.W.2d 395, 399 (Tex. Crim. App. [Panel Op.]
1979); Krebsbach v. State, 962 S.W.2d 728, 731 (Tex. App.—Amarillo 1998, pet. ref’d).
      Under (a)(3) of the burglary statute, the indictment, although not artfully worded, charged
Carlock with committing or attempting to commit one or more of five different felonies, other than
felony theft, when he entered Ruben Tindell’s house without permission. The statute allows for
the proof of any felony, other than felony theft, to be classified as a first degree felony; and
because none of the felonies alleged were felony theft, the same punishment is imposed regardless
of which felony is proved by the State. See Tex. Penal Code Ann. § 30.02(d) (Vernon Supp.
1999). This portion of the indictment is not so vague as to give insufficient notice of the offense
charged.
Duplicitous indictment
        Carlock also contends that the indictment is duplicitous. “Duplicity” is the technical fault
of uniting two or more offenses in the same count of an indictment. Black’s Law Dictionary
503 (6th ed. 1990); Gahl v. State, 721 S.W.2d 888, 895 (Tex. App.—Dallas 1986, pet. ref’d). 
The statute setting out the offense of burglary also allows for several ways and means by which
that offense can be committed. See Tex. Penal Code Ann. § 30.02 (Vernon 1994). As noted
previously, the indictment charged Carlock with burglary of a habitation under section 30.02(a)(1)
and (a)(3). Because none of the felonies alleged by the State included felony theft, the punishment
for both variations of burglary of a habitation remained the same, that being, as a first degree
felony. Tex. Penal Code Ann. § 30.02(d) (Vernon Supp. 1999). The indictment is not,
therefore, duplicitous. Mixon v. State, 632 S.W.2d 836, 838-839 (Tex. App.—Dallas 1982, pet.
ref’d); see also Gahl, 721 S.W.2d at 896. Carlock’s first issue is overruled.
LEGAL SUFFICIENCY
      In issues three and four, Carlock complains that the trial court erred in overruling his motion
for directed verdict and in submitting its charge to the jury because the State was then allowed to
convict Carlock without proof of “intent to commit a felony, to wit: robbery.” The trial court
overruled Carlock’s motion and his objection to the charge. Carlock’s argument under each issue
is the same, so we will discuss the issues together.
      Carlock’s only contention under these issues is that the evidence was legally insufficient to
prove his intent to commit robbery at the time he entered Tindell’s house. Although the State
alleged burglary “with intent to commit robbery,” it was not required, in this instance, to prove
that allegation. Because the State alleged multiple means for the commission of the offense, it was
required to prove only one of the alleged means in order to support the conviction. Eastep, 941
S.W.2d at 133. Allegation and proof of any means will suffice to support a conviction. Sidney,
560 S.W.2d at 681; Garcia, 537 S.W.2d at 933. 
      The theory of conviction based on intent to commit robbery was not submitted in the trial
court’s charge; therefore, it is unnecessary for us to decide Carlock’s complaint that the evidence
was insufficient to support that theory. Sidney, 560 S.W.2d at 681; Garcia, 537 S.W.2d at 933. 
Carlock’s third and fourth issues are overruled.
LESSER INCLUDED OFFENSE
      In his second issue, Carlock asserts that the trial court erred in failing to charge the jury on
burglary with the intent to commit theft as a lesser included offense of burglary with intent to
commit robbery. Pursuant to the Code of Criminal Procedure, an offense is a lesser included
offense if it is established by proof of the same or less than all the facts required to establish the
commission of the offense charged. Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981). 
The Court of Criminal Appeals implemented a two-step test to determine when a court should give
a charge on a lesser included offense to the jury. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim.
App. 1998). The first step is to decide whether the offense is a “lesser included offense” as
defined by article 37.09. Id. The second step requires an evaluation of the evidence to determine
whether there is some evidence to permit a rational jury to find the defendant is guilty only of the
lesser offense. Id. The State argues that Carlock was not entitled to a charge on burglary with
the intent to commit theft as a lesser included offense. We agree.
      Had the State proceeded with the theory that Carlock committed burglary of a habitation with
the intent to commit a felony, to-wit: robbery, burglary of a habitation with the intent to commit
theft is not a lesser included offense. In his brief, Carlock presumes his request was a lesser
included offense. This is not correct. It is clear from the statute that we must determine whether
the elements of the offense claimed to be a lesser included offense are the same or less than those
required to prove the charged offense. See Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon
1981) (emphasis added); Jacob v. State, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995). To prove
the offense of burglary with the intent to commit a felony, the State is required to show:
      1. The accused (requires proof of identity);
2. Without the owner’s consent;
3. Entered a habitation;
      4. With intent;
      5. To commit a felony.
Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 1994). To prove the offense of burglary with the
intent to commit theft, which Carlock contends is a lesser included offense, the State must show:
      1. The accused (requires proof of identity);
2. Without the owner’s consent;
3. Entered a habitation;
      4. With intent;
      5. To commit a theft.
Id.
      The first four elements are exactly the same and would seem to support the idea that the
second is a lesser included offense of the first. However, in reviewing all of the elements, the
requested offense requires neither proof of the same facts, because of the fifth element, nor less
facts than the offense charged. Proving an intent to commit theft is not the same as, nor less than,
proving an intent to commit a felony.


 They are different, and there is no provision for a
denomination as a lesser included offense because of different facts. Therefore, Carlock was not
entitled to a charge on burglary with intent to commit theft as a lesser included offense, and the
trial court did not err in overruling such request. Issue two is overruled.
JURY ARGUMENT
      Carlock contends in his last four issues that the State engaged in improper jury arguments. 
Jury arguments are proper if they fall within the following four categories: (1) summation of the
evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing
counsel, and (4) plea for law enforcement. Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim.
App. 1997); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
Comment on Right to Jury Trial
      In his fifth issue, Carlock maintains that the trial court erred in overruling his motion for
mistrial after sustaining an objection to two portions of the State’s argument which he believed was
an improper comment on his right to a jury trial. The alleged offending arguments took place
during both opening and closing of the State’s argument on guilt/innocence and are set out as
follows:
      State:    As far as the evidence in this case, frankly I think we could have started this trial
about four fifteen yesterday afternoon and ya’ll [sic] would have heard all of the
information that you would need to find this man guilty of what he’s been accused
of, came out of his own mouth. Instead, he’s pleaded not guilty, asked you to find
him not guilty- -
 
      Defense:      Objection, Your Honor, comment on his right to trial. We object.
 
      Court:   I will sustain.
 
      Defense:      Request the jury be instructed to disregard.
 
      Court:   He’s entitled to a jury - - jury trial.
 
      Defense:      Move for mistrial.
 
      Court:   Overruled.

* * *
      State:    Didn’t want to confront anyone? Didn’t want to confront anyone? Tell me - - tell
me, please, when he saw Mr. Tindell in bed he didn’t want to confront anyone, why
didn’t he leave? Why didn’t he leave? The truth of the matter, he was going to steal
to get drugs. He didn’t care who it was, what it was or where it was. That is the
truth.
 
Mr. Hultgren, he stepped up to the bar, pled true. Mr. Stratton stepped up to the bar
and pled true - -
 
      Defense:      Objection, Your Honor, objection, Your Honor. This implies that the
Defendant should have pled something other than not guilty. We would object
on that basis.
 
      Court:   Sustain.
 
      Defense:      Instruct the jury to - - request the jury be instructed to disregard the prosecutor’s
argument for any purpose whatsoever.
 
      Court:   You will disregard.
 
      Defense:      Move for a mistrial.
 
      Court:   Overrule.

      When the trial court sustains an objection and grants a request for an instruction for the jury
to disregard but denies the motion for mistrial, the issue becomes whether the trial court erred in
denying the mistrial. Faulkner v. State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet.
ref’d). The trial court’s decision is error only if the argument is extreme, manifestly improper,
injects new and harmful facts into the case or violates a mandatory statutory provision and was
thus so inflammatory that its prejudicial effect cannot be reasonably removed from the minds of
the jury by an instruction to disregard. Id.; Washington v. State, 822 S.W.2d 110, 118 (Tex.
App.—Waco 1991), rev’d on other grounds, 856 S.W.2d 184 (Tex. Crim. App. 1993). See also
Trent v. State, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no pet.). If the instruction cured
any prejudicial effect


 caused by the improper argument, the reviewing court should find that the
trial court did not err. Faulkner, 940 S.W.2d at 312. If the instruction did not cure the prejudicial
effect, error results, and the reviewing court proceeds with a harm analysis. Id. at 313;
Washington, 822 S.W.2d at 118. When a comment is made by a prosecutor regarding a
defendant’s election to proceed with a jury trial, the concern of the court centers around whether
the prosecutor had, in effect, asked the jury to punish or otherwise penalize the defendant for
exercising his right to a trial by jury. See Villarreal v. State, 860 S.W.2d 647, 649 (Tex.
App.—Waco 1993, no pet.); Taylor v. State, 987 S.W.2d 597, 600 (Tex. App.—Texarkana 1999,
pet. ref’d). 
      Neither portion of the State’s argument complained about violated any statutory provision nor
injected new or harmful facts. The first argument can reasonably be interpreted as an attempt to
show that despite his plea of not guilty, Carlock, himself, supplied all the evidence necessary for
the jury to convict him. In the second instance, by asserting that other co-defendants who testified
against Carlock had pled or would plead true, the State was highlighting the conflicts in the
testimony and emphasizing the “untruths” told by Carlock. Additionally, the arguments were not
extreme or manifestly improper. We believe it is clear from the record in this case that it was not
the State’s intent to request the jury to punish Carlock for exercising his right to a jury trial. 
      Although we do not expressly decide whether the argument was improper, assuming it was
improper, we hold the instructions given by the trial court after the arguments cured the prejudicial
effect, if any. The trial court did not err in overruling Carlock’s motions for mistrial, and no
harm analysis is necessary. See Faulkner, 940 S.W.2d at 312; Washington, 822 S.W.2d at 118. 
Issue five is overruled.
Placing Jurors in the Position of the Victim
      In his sixth issue, Carlock contends that the trial court erred in overruling his motion for
mistrial after sustaining an objection to the State’s argument which, he believes, improperly placed
the jury in the position of the victim. The following argument occurred during the close of the
State’s argument on guilt/innocence:
      State:    Hyped? This case is hyped? Can you - - let me - - ninety-five year old man, could
have been any of us lying in bed asleep in the middle of the night and these home
invaders come in, jump on top of him, put a pillow over his face, grab him by the
arms, and bruises and shakes. You heard him say I was in bed, I was in fear, I
didn’t think I would get out alive. You heard him say it. That’s not in fear of your
life? And wouldn’t - - isn’t it logical that the terror - - the terror that would go
through you? Can you imagine – 
 
      Defense:      Objection, trying to put the jurors in position of the witness.
 
      Court:   I’ll sustain.
 
      Defense:      Request the jury be instructed to disregard for any purpose whatsoever.
 
      Court:   You are instructed to disregard.
 
      Defense:      Move for mistrial.
 
      Court:   Overruled.

      As stated previously, assuming, but not deciding, the argument was improper, the issue
becomes whether the trial court erred in overruling Carlock’s motion for mistrial. Faulkner, 940
S.W.2d at 312. If the instruction to disregard by the trial court cured any prejudicial effect caused
by the argument, the reviewing court should find that the trial court did not err. Id. The State
began this portion of its argument by responding to Carlock’s assertion that the case against him
had been “hyped” and “overdramatized.” Additionally, Tindell testified numerous times
regarding how he feared for his life while being held down, yelled at, and beaten with his own
arm.
      Bearing this in mind, we find the State’s argument was not so inflammatory that any
prejudicial effect resulting therefrom could not be cured by an instruction by the trial court. Thus,
we hold the instruction given by the trial court after the argument cured the prejudicial effect, if
any, and the trial court did not err in overruling Carlock’s motion for mistrial. Again, because
the trial court did not err, no harm analysis is necessary. See Faulkner, 940 S.W.2d at 312;
Washington, 822 S.W.2d at 118. Carlock’s sixth issue is overruled.
Argument Outside the Record
      Carlock contends in his seventh issue that the trial court erred in overruling his objection to
the State’s argument on guilt/innocence which he believed asked the jury to speculate on matters
outside the scope of the record. The prosecutor argued:
      State:    Why would he ask those questions? May be [sic] he thought that if he got up on the
stand and said, well, I didn’t cause bodily injury he would convince you there’s
reason to doubt that he’s guilty.
 
Isn’t it strange he even went so far as to say I don’t know how those marks got on
Mr. Tindell? That’s how desperate he is. He knows exactly how they got there and
whether he produced them or exactly how he produced them is not the issue. He
knows how they got there. Maybe his hope was that Mr. Tindell, because of his age
or infirmity simply wouldn’t be able to get up here, couldn’t or wouldn’t come to tell
you - -
 
      Defense:      Objection, Your Honor. There’s no testimony about that, that’s outside the
                        record.
 
      Court:   Overruled.

      The State maintains that the above argument was a reasonable deduction from the evidence. 
Counsel is allowed wide latitude in drawing inferences from evidence so long as they are
reasonable, fair, legitimate and offered in good faith. McFarland v. State, 845 S.W.2d 824, 840
(Tex. Crim. App. 1992), cert. denied, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).
      Carlock cites only Young v. State to support his contention that the facts argued were outside
the scope of the record. Young v. State, 752 S.W.2d 137 (Tex. App.—Dallas 1988, pet. ref’d). 
Specifically, he argues that offenses or motives found within the “vivid imagination” of the State
without support in the record are beyond the scope of proper jury argument. However, we believe
Young is not controlling. 
      In Young, the prosecutor argued facts which the court found tried the appellant for a fictitious
attempted offense against the police. The prosecutor speculated that the reason the appellant had
insisted on returning to his car after a traffic stop was that the appellant knew he had guns in the
car. The prosecutor continued, “and then he could - - then you take up on the kind of person that
you already know that he is. He has been convicted of armed robbery.” Id. at 144. This theme
was continued considerably by the prosecutor. Based on the record before them, the court agreed
that offenses found in the vivid imagination of the prosecutor with no support in the record are
outside the scope of proper jury argument. It held that the appellant was charged with being a
felon in possession of a firearm, not capital murder or resisting arrest as suggested by the
prosecutor’s argument. Id. at 145. 
      In the case before us, the prosecutor first reminded the jury of the types of questions asked
by Carlock during voir dire. He then deduced that perhaps, if Carlock denied one element, the
jury would not convict him. The prosecutor continued by restating how Carlock testified that he
did not know how the bruises got on the victim. He concluded that Carlock knew exactly how
they got there. The prosecutor drew the objection from Carlock when he surmised that Carlock
said this because he hoped Tindell would not testify due to his age or infirmity. After the
objection was overruled, he reminded the jury that Tindell was the only one who could testify that
he was hurt. This does not suggest a finding of guilt based on a different offense as in Young.
      Carlock’s juvenile co-defendant testified that he and Carlock held down Tindell with a pillow
and by holding his arms. Tindell testified that he was 95 years old and was held down during the
burglary and was struck with his own arm. He also testified that his arms were bruised as a result
of the restraints. Carlock testified that he never held Tindell by the arms and did not know how
Tindell was bruised. The State was able to show that Carlock had previously lied in a sworn
statement to the police.
      Based on the record, the State’s argument can be considered a reasonable deduction from the
evidence. It was reasonable, fair, legitimate, and offered in good faith. See McFarland v. State,
845 S.W.2d at 840. Thus, the trial court did not err in overruling Carlock’s objection. Carlock’s
seventh issue is overruled.
Speculation
      In his eighth and final issue, Carlock complains that the trial court erred in overruling his
objection to the State’s argument on punishment which he believed improperly invited the jury to
speculate as to what could have happened to the victim. In its punishment summation, the State
argued:
      State:    I guess Mr. Hurley will argue ten years or something less than ten years is sufficient. 
Well, we know the legislature said nine point nine times that may not be sufficient. 
The maximum punishment is ninety-nine years. Leniency has already been shown
in this case because God preserved the life of Mr. Tindell. This is a very serious
offense. Whether this Defendant recognized it or not, he was one step away from
capital murder. Suppose Mr. Tindell hadn’t gotten his hand up there in time to keep
from suffocating, suppose - -
 
      Defense:      Objection, calls for speculation, calculated to inflame the minds of the jurors.
 
      Court:   I am going to overrule.

      Again, Carlock relies only on Young to support his proposition. Once again, we find Young
not to be controlling. In the present case, the record showed that Tindell’s home was invaded by
at least two individuals. Their purpose was to steal items to ultimately buy drugs. Tindell, a 95
year old man, was asleep in bed at the time of the invasion. A rubber-backed mat and a pillow
were placed over Tindell’s head and his hands were held down. Tindell’s own arm was used to
strike him in the face. Tindell managed to free one hand and place it between his face and the mat
to allow air in to his face. Prior to that, Tindell had told his assailants that he was having
difficulty breathing.
      The argument was a reasonable deduction from the evidence that had Tindell not been able
to receive more air, he would have died. Had that happened, Carlock would have been facing a
higher charge. See Cain v. State, 893 S.W.2d 681, 684 (Tex. App.—Fort Worth 1995), aff’d,
947 S.W.2d 262 (Tex. Crim. App. 1997). Thus, the trial court did not err in overruling Carlock’s
objection. Issue eight is overruled.
CONCLUSION
      Having overruled all of Carlock’s issues, the trial court’s judgment is affirmed.
 
                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed December 15, 1999
Publish