NO. 07-01-0324-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 6, 2002
_____

EUGENE PERRY, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 99-464,051; HON. DRUE FARMER, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Appellant, Eugene Perry, Jr., appeals his conviction for driving while intoxicated (DWI). Via two issues, he contends that the trial court erred by refusing to grant 1) his motion to dismiss since he was allegedly denied a speedy trial and 2) an instructed verdict because there was a fatal variance between the allegations contained in the charging instrument and the evidence presented at trial. We affirm.

## Background

While on patrol at 4:00 a.m., a police officer discovered appellant and a companion asleep in their vehicle while stopped at a flashing red light. The vehicle had its motor running and transmission engaged. The officer placed the gear shift lever in park, turned the ignition off, removed the keys from the ignition, placed the keys atop the car, and awoke appellant. When he awoke, appellant smelled of alcohol, had red, blood-shot-eyes, and slurred his speech. Upon observing these circumstances, the officer administered to appellant various field sobriety tests, which tests appellant was unable to satisfactorily perform.

Thereafter, appellant was arrested and taken to the police station. At the station, sobriety tests were again administered to appellant. His performance of same was videotaped. However, the tape was lost before trial. Nevertheless, a jury convicted him of driving while intoxicated.

## Issue One – Speedy Trial

Appellant initially contends that he was denied a speedy trial. And, because he was, the trial court was purportedly required to dismiss the prosecution. We overrule the point.

### Standard of Review

The right to a speedy trial encompasses not only the mere right to speed but also to an orderly disposition of the charge. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 459-60, 30 L.Ed.2d 468 (1971); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *Anderson v. State*, 8 S.W.3d 387, 389 (Tex. App.–Amarillo 1999, pet. ref'd).

And, in determining whether both were afforded the accused, the United States Supreme Court announced, in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that four indicia must be balanced. They consist of the 1) length of the delay, 2) reason for the delay, 3) time at which the defendant asserted the right, and 4) prejudice, if any, suffered by the defendant due to the delay. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192-93, 33 L.Ed.2d at 116-17; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997); *Anderson v. State*, 8 S.W.3d at 389-90. Inherent in factors two and three is an assessment of the conduct of both the state and defendant. *State v. Munoz*, 991 S.W.2d at 821 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). Furthermore, while "'[n]o single . . . factor is a 'necessary or sufficient condition to the finding' of a speedy trial violation,'" *State v. Munoz*, 991 S.W.2d at 821; *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed. 2d at 118, it is necessary that the court first find an undue delay. If there is no such delay, then there is no reason to address the remaining indicia. *Anderson v. State*, 8 S.W.3d at 390.

Next, in analyzing the trial court's decision, the reviewing court balances the four factors anew. *Johnson v. State*, 954 S.W.2d at 771; *Anderson v. State*, 8 S.W.3d at 390. That is, while we defer to the trial court's resolution of the historical facts particular to the case, the application of those facts to the four indicia itemized above involves a question of law. *Anderson v. State*, 8 S.W.3d at 390. And, being a question of law, it undergoes review *de novo*. *Munoz v. State*, 991 S.W.2d at 821; *Johnson v. State*, 954 S.W.2d at 771; *Anderson v. State*, 8 S.W.3d at 390. With this said, we turn to the record before us.

3

*Application of Standard*

a.     *Length of Delay*

The delay at bar exceeded 2 years.  That is, the information formally charging appellant was filed of record on March 15, 1999.  Trial was had upon the accusation in mid-July, 2001.  Since a 17 month lapse was deemed sufficiently long in *Munoz* to trigger consideration of the remaining *Barker* factors, we conclude that the span before us is and does as well.

b.     *Reason for the Delay*

The record reflects that on the day the information was filed, the State "announced ready from that point forward."  Appellant did not dispute this below.  Nor did it dispute that approximately 11 months later, the cause was set for trial on the court's February 7, 2000 trial docket.  Whether it had been scheduled for adjudication any time prior thereto is unknown.  However, on February 7, 2000,  the defendant moved for a continuance.  He did so on the ground that his counsel had suffered a heart attack and was undergoing testing.  Thereafter, the proceeding was set for trial on July 10, 2000.  Why it was not then tried is also unknown.   Nevertheless, the matter was placed on the court's "backlog docket," and the parties agreed that the ensuing delay was caused, for the most part, by "the large docket of the court."

Though being on the "backlog docket," the matter did not remain completely dormant.  The parties did engage in plea negotiations during the interim.  And, both the State and appellant agree that the proceeding twice appeared on the "guilty plea docket."

4

According to counsel for appellant, the latter had accepted a plea offer only to later reject it. His rejection came after discovering that the video tape of his undergoing sobriety tests at the police station was missing.

Delay caused by good faith plea negotiation does not weigh against the government. *Munoz v. State*, 991 S.W.2d at 824. To the extent that the State offered and appellant initially accepted a plea bargain, one can reasonably infer that the plea negotiations at bar were undertaken in good faith. Nor does delay arising from a continuance sought by the defendant bode in favor of a speedy trial claim. And, to the extent that the remainder of the delay at bar is attributable to an overcrowded docket, that delay is considered relatively neutral. *Id.* at 822. That is, it may weigh against the state but to a much lesser degree than delay caused by a deliberate attempt on behalf of the government to postpone. *Anderson v. State*, 8 S.W.3d at 390.

c.      *Assertion of the Right*

Next, the record reflects that appellant failed to raise the spectre of speedy trial until June of 2001(some 27 months after the State formally initiated the prosecution). Moreover, when he did broach the subject, appellant did not demand that he be immediately tried. Rather, he moved to dismiss the proceeding. Additionally, this request came after he 1) discovered that the video tape of his sobriety test was missing and 2) withdrew his acceptance of a plea bargain. It also appears that while the action awaited resolution he remained free from the confines of jail. These circumstances are of import since delay in demanding a speedy trial makes it difficult for an accused to prove that he

5

was denied a speedy trial. *Anderson v. State*, 8 S.W.3d at 391. Indeed, it constitutes strong indication that he does not want a timely adjudication of the pending charges. *Id.* And, when the delay is coupled with the evidence illustrating that 1) he was free during the interim, 2) reacted only after discovering the loss of evidence potentially favorable to the prosecution, and 3) merely sought to win dismissal as opposed to a speedy trial, we find it difficult to conclude that appellant truly desired a speedy trial. *See Degarmo v. State*, 922 S.W.2d 256, 266 (Tex. App.-- Houston [14th Dist.] 1996, pet. refd.) (stating that a defendant asking for dismissal, as opposed to a prompt trial, is clearly relevant and may attenuate the strength of his speedy trial claim ).

      d.     *Prejudice*

Finally, whether appellant was prejudiced by the delay is assessed with an eye towards the interests which the right to a speedy trial were designed to protect. *State v. Munoz*, 991 S.W. 2d at 826. Those interests consist of 1) preventing oppressive pretrial incarceration, 2) minimizing anxiety and concern of the accused, and 3) limiting the chance that the accused's defense will be impaired. *Id.* Of these indicia, the last is most important since the inability to adequately defend ones self affects the fairness of the entire system. *Id*. And, while unsaid by most courts, it is nonetheless a necessity that the prejudice in question emanate from the delay. *Anderson v. State*, 8 S.W.3d at 391-92. In other words, there must be a causal relationship between the two. If this were not so, then logically the factor would be of no importance. *Id.*

6

As to the matter of pretrial incarceration, the record discloses that appellant's freedom was not so restricted. That this is true is illustrated by his testifying that he babysat his grandchild at the time of trial. One can hardly babysit while incarcerated.

As to the matter of anxiety, little appears in the record. Indeed, appellant does not suggest that this indicia prejudiced him in any way. Rather, he simply argues that he suffered prejudice because the video tape of his undergoing sobriety testing was lost. Yet, we find that of no consequence for several reasons. First, whether the tape contained evidence detrimental or helpful to appellant's defense is unknown. It can hardly be suggested that the loss of evidence is prejudicial to an accused's defense when no one knows what the evidence depicted. *See United States v. Valenzuela - Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982) (stating that when an accused complains of lost evidence, he must show that the evidence lost is material and favorable to him); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.--Houston [1st Dist.] 1996, no pet.) (stating the same).[1]

More importantly, the record is silent on whether the delay is attributable to the loss of the tape. At most, the State merely suggested that the nexus between the two was a "possibility." Yet, we find this of little substance since no one knew when or how the tape was lost. And, without such evidence, one cannot reasonably infer any nexus between the delay and the loss. Indeed, it may well be that whoever possessed the tape lost it

---

[1]Though appellant insinuates in his appellate brief that the tape was pivotal evidence, defense counsel represented to the trial court that the tape had not been seen. Since it had not been seen, the proposition that it somehow contained evidence useful to the defense rings false.

immediately after the formal charges were filed against appellant. If this were so, then the loss was hardly caused by the delay. So too may the converse be true, *i.e.*, that the tape was lost long after charges were filed. Yet, because the record contains no evidence on the matter, we can only speculate upon the relationship between delay and loss, and speculations have no probative value.

e.     *Summary*

Simply put, the evidence of prejudice is minimal. Similarly minimal is the evidence suggesting that appellant actually wanted to be tried in a timely manner. And, though there existed delay, it was caused by both the State and appellant. And, to the extent it was caused by the State, the reason it did so must be weighed "less heavily" against the government, according to precedent. In sum, these are not circumstances indicating that appellant was denied his right to a speedy trial. And, the trial court did not err in refusing to grant appellant's motion to dismiss.

### Issue Two – Fatal Variance

In his second and last issue, appellant claims that there arose "a material variance between the . . . information and the proof adduced at trial" which proved "fatal to [his] conviction." This purported variance involves the manner in which the State intended to prove that appellant was driving while intoxicated. That is, appellant contends that the State obligated itself to prove, via evidence of a breath test, that he had a blood alcohol concentration of .10 or more. Yet, no evidence of a breath test was presented. Nor was any other evidence of his blood alcohol concentration presented. Given this, there arose

8

a discrepancy between the allegations in the charging instrument and the proof at trial warranting an instructed verdict, appellant concludes. We overrule the point.

To prove the offense of driving while intoxicated, the State must present evidence establishing that a person operated a motor vehicle in a public place while intoxicated. TEX. PENAL CODE ANN. §49.04(a) (Vernon Supp. 2000). Since there exists several statutory ways in which one can be intoxicated, the State is also obligated to allege and prove a least one of those means. *State v. Carter*, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991). Furthermore, those ways in which one can be intoxicated consist of 1) establishing that the person did not have the normal use of mental or physical faculties by reason of the introduction of alcohol or any other substance into the body or 2) having an alcohol concentration of .08 or more.[2] TEX. PENAL CODE ANN. §49.01(2). Yet, as intimated above, the State need only prove one or the other. This does not mean that it is precluded from alleging one or both in the charging instrument. *See Krebsbach v. State*, 962 S.W.2d 728, 730-31 (Tex. App.–Amarillo 1998, pet. ref'd.) (stating that the government may allege all or one of the ways in which an offense can be committed if the statute provides a list of different ways). It may do either. If it were to allege both, it may do so either in the conjunctive or disjunctive; yet, it still need only prove one, irrespective of whether the conjunctive or disjunctive were used. *Wheeler v. State*, 35 S.W.3d 126, 133 (Tex. App–Texarkana 2000, pet. ref'd.); *Krebsbach v. State*, 962 S.W.2d at 731. Finally, since

---

[2]Since the time of the offense at bar, the legislature amended that portion of §49.01 discussing the level of alcohol concentration required to show intoxication. At one time the level was .10. Now it is .08. This change is of no import at bar because we cite to the alcohol concentration level only for purposes of showing that there are two ways in which the State may show one to be intoxicated.

9

it need only prove one or the other and assuming both are pled in the charging instrument, it may also abandon one or the other. *Eastep v. State*, 941 S.W.2d 130, 133-34 (Tex. Crim. App. 1997).

> At bar, the State accused appellant (via the information) of being intoxicated by
>
> . . .*not having the normal use of mental or physical faculties*, by reason of the introduction of alcohol, a controlled substance, a drug, a substance or its vapors that contain a volatile chemical, an abusable glue or an aerosol paint, or a combination of two or more of those substances into the body, *having an alcohol concentration of .10 or more,* as measured by the number of grams of alcohol per 210 liters of breath, operate a motor vehicle in a public place . . . .

(Emphasis added). From this we see that despite the absence of the conjunctive "and" or disjunctive "or," it nevertheless incorporated into the charging instrument both statutory ways in which one could be intoxicated.[3] That is, it merely averred that appellant lacked the normal use of his mental or physical faculties by ingesting a substance *and* that he had an alcohol concentration of .10 or more. Despite alleging both, it need only have proved one or the other. *Wheeler v. State*, *supra*; *Krebsbach v. State*, *supra*. And, this the State opted to do when it "ask[ed] for the abandonment as a means of limiting [the accusation] to what must be proved . . . ." Finally, in response to this request by the State, the trial court omitted from its jury charge the allegation regarding "an alcohol

---

[3]Admittedly, the information is not an example of an artfully drawn writing. Nevertheless, perusal of same illustrates that by incorporating the phrases "not having the normal use . . ." and "having an alcohol concentration of .10 or more," the State was merely referring to the different statutory ways in which it could prove that appellant was intoxicated. Indeed, it stated as much to the trial court after appellant requested that the jury be told (via the charge) that both allegations had to be found before it could convict him.

10

concentration of .10" and retained that regarding the lack of the normal use of mental and physical faculties.

In sum, the State was not obligated to prove that appellant had a blood alcohol concentration of .10 or more simply because the allegation was mentioned in the information. Authority entitled it to choose the method by which it intended to prove how appellant was intoxicated since both definitions were included in the information. And, that the appellant may have thought that the State was obligated to prove an alcohol concentration of .10 since that allegation appeared in the information matters not given *Wheeler* and *Krebsbach*.[4]

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn
Justice

Do not publish.

---

[4]Our holding also comports with directives of the Court of Criminal Appeals in *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001). A hypothetically correct charge could have included either allegation regarding the way appellant was intoxicated, in view of *Wheeler* and *Krebsbach*. Moreover, it actually included one mentioned in the formal charging instrument. And, that *Eastep*, *Wheeler*, *Krebsbach*, and like authority have long held that the State could allege one or more of the statutory ways in which a crime is committed and then select which one to submit to the jury vitiates any claim of surprise on the part of the accused. Next, in alleging both definitions of intoxication and then selecting one to submit to the jury, the State was not exposing appellant to a risk of multiple prosecutions. That there may have been two ways in which intoxication could have been established still means that there was only one instance of driving while intoxicated on the date at issue.

11