NO. 07-04-0542-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 24, 2006



______________________________




PRESTON WOOD, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF ARMSTRONG COUNTY;



NO. 1031; HONORABLE HAL MINER, JUDGE



_______________________________



Before REAVIS and HANCOCK, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION

 Following a plea of not guilty, appellant Preston Wood was convicted of indecency
with a child by sexual contact and sentenced to twenty years confinement and a $10,000
fine. Presenting five issues, appellant contends (1) the evidence was legally and (2)
factually insufficient to support his conviction, (3) the jury was erroneously charged on the
basis of a disjunctive culpable mental state, (4) the court impermissibly commented on the
weight of the evidence during punishment, and (5) a fatal variance existed in the indictment
with respect to the name of the victim. We affirm.

 Appellant was charged with engaging in sexual contact with a 16-year-old female. 
Appellant had been romantically involved with the victim's mother. On September 2, 1998,
appellant visited the victim's mother at her home while she was recovering from a
hysterectomy. Although the relationship was no longer romantic, appellant decided to
spend the night. The victim's mother slept on the couch while the victim lay next to her on
the living room floor. At some point during the night, the victim awoke to appellant rubbing
her genitals with his finger over her clothes. The victim rolled over on her stomach and
eventually got up and went to the bathroom. A short time later, she returned to the living
room and went to sleep in a recliner.

 The next morning, appellant woke the victim and asked her if he had "done
something" to her during the night. She responded that he had not. Appellant also
informed the victim's mother that he "may have done something" to her daughter. Shortly
thereafter, appellant left the residence, and the victim told her mother what had happened. 
The victim's mother confronted appellant later that evening. Appellant admitted to touching
the victim but claimed he mistook the victim for her. The victim's mother reported the
incident to the Armstrong County Sheriff's Office. The victim was then taken to a children's
advocacy center in Amarillo where she was interviewed. The following month, appellant
visited Armstrong County Sheriff Carmela Jones Smith at her home and confessed he was
sorry for touching the victim. He also explained he thought he was touching the victim's
mother. Appellant was subsequently arrested for indecency with a child.

 By his first and second issues, appellant contends the evidence was legally and
factually insufficient to support his conviction because there was no evidence presented
at trial that he acted (1) with intent to arouse and gratify his sexual desire, and (2)
intentionally and knowingly. We disagree.

 When both the legal and factual sufficiency of the evidence are challenged, we must
first determine whether the evidence is legally sufficient to support the verdict. Clewis v.
State, 922 S.W.2d 126, 133 ( Tex.Cr.App. 1996). It is a fundamental rule of criminal law
that one cannot be convicted of a crime unless it is proved beyond a reasonable doubt that
the defendant committed each element of the alleged offense. U. S. Const. amend. XIV;
Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2005); Tex. Pen. Code Ann. § 2.01
(Vernon 2003). When conducting a legal sufficiency review, we must determine whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 ( 1979). 
We conduct this analysis by considering all the evidence before the jury-whether proper or
improper-so that we can make an assessment from the jury's perspective. Miles v. State,
918 S.W.2d 511, 512 (Tex.Cr.App. 1996). We must uphold the jury's verdict unless it is
irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755
S.W.2d 866, 867 (Tex.Cr.App. 1988). 

 We next proceed with a factual sufficiency review. Clewis, 922 S.W.2d at 133.
Under this standard, we view all the evidence without the prism of "in the light most
favorable to the prosecution" and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State,
23 S.W.3d 1, 9 (Tex.Cr.App. 2000). We must determine after considering all the evidence
in a neutral light, whether the jury was rationally justified in finding guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Cr.App. 2004 ). In our
review, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility
of the witnesses, as this was the function of the trier of fact. See Adelman v. State, 828
S.W.2d 418, 421 (Tex.Cr.App. 1992).

 Before we determine whether the evidence was sufficient to support appellant's
conviction, we must first review the elements the State was required to prove. Appellant
was charged with knowingly and intentionally engaging in sexual contact with the victim,
a child under 17 years of age and not his spouse, by touching her genitals with his finger
with intent to arouse or gratify his sexual desire. See Tex. Pen. Code Ann. § 21.11 (Vernon
2003). The victim testified she awoke to appellant rubbing her vagina over her clothes with
his finger. The testimony of a child victim alone is sufficient to support a conviction for
sexual assault. See Tex. Code Crim. Proc. Ann. art. 38.07(a)-(b) (Vernon 2005); Tear v.
State, 74 S.W.3d 555, 560 (Tex.App.-Dallas 2002, pet. ref'd). The requisite intent to
arouse or gratify a person's sexual desire can be inferred from the person's conduct,
remarks, or surrounding circumstances. McKenzie v. State, 617 S.W.2d 211, 216
(Tex.Cr.App. 1981). There was also evidence appellant asked the victim about the incident
the next morning and admitted to both her mother and Sheriff Smith that he may have
touched her inappropriately. Although appellant claimed it was a case of mistaken identity,
the jury, as the exclusive judge of the facts and credibility of the witnesses, is free to
believe or disbelieve any part of a witness's testimony. Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 1979); Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). 

 Viewing the evidence in the light most favorable to the prosecution, we conclude
a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly
and intentionally touched the victim with intent to arouse and gratify his sexual desire. We
further conclude the evidence is not so weak or so against the overwhelming weight of the
evidence as to render the jury's verdict to be clearly wrong and unjust. Appellant's first and
second issues are overruled.

 By his third issue, appellant contends the trial court erred by charging the jury on the
basis of a disjunctive culpable mental state. Specifically, he challenges the fact that the
indictment alleges he engaged in sexual contact with the victim "intentionally and
knowingly" while the jury charge allows a conviction upon finding he acted either 
"intentionally or knowingly." Appellant contends this was error because Ngo v. State, 175
S.W.3d 738 (Tex.Cr.App. 2005), requires that a jury verdict must be unanimous. We
disagree.

 When reviewing the record for jury charge error, we must first determine whether
error actually exists, and second, whether sufficient harm resulted from the error to require
reversal. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon Supp. 2005); Hutch v. State, 922
S.W.2d 166, 170 (Tex.Cr.App. 1996). As appellant acknowledges, the practice of indicting
a defendant's mental state conjunctively but submitting it to the jury disjunctively has been
upheld by Texas courts. E.g., Rogers v. State, 774 S.W.2d 247, 251 (Tex.Cr.App. 1989),
overruled on other grounds by Peek v. State, 106 S.W.3d 72, 79 (Tex.Cr.App. 2003);
Krebsbach v. State, 962 S.W.2d 728, 731 (Tex.App.-Amarillo 1998, pet. ref'd). 

 In addition, we find appellant's reliance on Ngo to be misplaced. In Ngo, the
indictment alleged three separate criminal acts, but the jury charge permitted a conviction
even if the jurors could not unanimously agree as to which one of the acts the defendant
committed. Ngo, 175 S.W.3d at 741. Affirming the lower court, the Court of Criminal
Appeals held that the failure to require a unanimous jury verdict was error which resulted
in egregious harm to the defendant. Id. at 741-52. Provided the Court did not address
conjunctive or disjunctive mental states, we find nothing in this opinion, or subsequent case
law for that matter, overruling the Court's holding in Rogers. Accordingly, we find no error
with respect to the jury charge in the present case. Appellant's third issue is overruled.

 By his fourth issue, appellant contends the trial court impermissibly commented on
the weight of the evidence while reading the jury charge during the punishment phase. 
After instructing the jury regarding consideration of parole and good conduct time, the trial
court stated as follows:

 Let me tell you this. Every time I read this I want to tell the jury, I didn't write
that. The legislature wrote that wording exactly from the Code of Criminal
Procedure, and I am required to read it.


 In order for us to consider appellant's complaint on appeal, the record must show
he preserved his complaint by a timely request, objection, or motion and obtained an
adverse ruling from the trial court. Tex. R. App. P. 33.1(a); Hull v. State, 67 S.W.3d 215,
217 (Tex.Cr.App. 2002). Here, appellant did not object to the court's remarks or request
a mistrial. Nevertheless, appellant suggests the comments should be analyzed under the
Almanza standard for unpreserved jury charge error. See Almanza v. State, 686 S.W.2d
157, 171 (Tex.Cr.App. 1984). However, even assuming it constituted an improper
comment on the weight of the evidence, we are not convinced that the trial court's remarks
caused egregious harm to appellant such as that contemplated in Almanza. See id. 
Appellant's fourth issue is overruled.

 Appellant's fifth issue alleges a fatal variance existed between the last name of the
victim alleged in the indictment and the last name provided by the victim at trial. The
indictment alleges the victim's last name was "Rowell." However at trial, the victim spelled
her last name as "Rawell." Appellant contends this variance makes the evidence legally
and factually insufficient to support his conviction as alleged in the indictment. We
disagree.

 Under the rule of idem sonans, a variance between the name alleged in the
indictment and that proved at trial is immaterial if the names sound the same or if it is
difficult to distinguish between the two names when they are pronounced out loud. Martin
v. State, 541 S.W. 2d 605, 608 (Tex.Crim.App. 1976). Provided the variance in the present
case consists of a single letter which sounds similar when pronounced, we find this
principle applicable here. Furthermore, appellant does not contend that the spelling of the
victim's name in the indictment surprised him or failed to provide him notice of the charge
against which he was required to defend. Appellant's fifth issue is overruled. 

 Accordingly, the trial court's judgment is affirmed. 

 

 Don H. Reavis 

 Justice 


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.



at the end of the
hearing. Murphy v. State, 112 S.W.3d 592, 601 (Tex.Crim.App. 2003).
          In this case, at the conclusion of the pretrial hearing regarding the voluntariness of
appellant’s confession, the court denied appellant’s Motion to Suppress. Based on that
ruling, the State specifically requested that the trial court make findings of fact and
conclusions of law. In response, the trial court stated, 
I reviewed the entire transcript of the interrogation, made very clear to the
Defendant that she was not in custody, and her statement was not induced
by any promises. In fact, it was quite clear from the transcript the officer
commented extensively that it was to her benefit to cooperate but that he
had no control over decisions made by the District Attorney in this County,
and that – that the Court finds that at no time was she coerced or was
induced to make the statement involuntarily.
 
          Therefore, we conclude that the trial court did indeed comply with section 6 of article
38.22. See id. at 601-02. We conclude that these findings are sufficient to provide this
court a basis upon which to review the trial court’s application of the law to the facts
particular to this case. We overrule appellant’s first issue.
Admission of Videotape and Written Confession
          Generally, a trial court’s ruling on a motion to suppress is reviewed by an abuse of
discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). However,
when presented with a question of law based upon undisputed facts, an appellate court
performs a de novo review of the trial court’s ruling. Id.; Guzman v. State, 955 S.W.2d 85,
89 (Tex.Crim.App. 1997). Before a promise will render a confession inadmissible, it must
be shown that the promise induced the confession. Muniz v. State, 851 S.W.2d 238, 254
(Tex.Crim.App. 1993). In order to induce the confession, a promise must be (1) positive,
(2) made or sanctioned by someone in authority, and (3) of such an influential nature that
a defendant would speak untruthfully in response thereto. Id. 
          Appellant raises the issue of voluntariness by complaining of the admission of the
videotape of the appellant’s interview with Muniz as well as the second written statement
given by appellant. Appellant contends that Muniz made comments regarding appellant’s
son that were meant to induce appellant to confess. Specifically, appellant contends that
Muniz stated that it would be better for appellant to cooperate, that appellant needed to
consider whether she wanted the chance to be with her son someday, and that she
needed to take advantage of the opportunity that the police were giving her to tell the truth.
           There is no dispute that Muniz did, in fact, make those remarks to appellant; the
dispute is the effect of such remarks. Consequently, we review the trial court’s ruling to
admit the videotape and statements de novo. See Oles, 993 S.W.2d at 106. At the outset
of Muniz’s meeting with appellant, Muniz explained that his role at the meeting was to act
as intermediary between appellant and the Hutto police. Muniz further informed appellant
that she was not under arrest. Next, Muniz explained to appellant that the Hutto police
were seeking a written statement from her and asked whether she would provide a
statement. After appellant wrote down a statement, Muniz began encouraging her to tell
more of the story. Muniz began speaking to appellant about the inconsistencies in
appellant’s statement and the evidence in the case. Muniz spoke to her about the autopsy,
the statement of one of the other children detailing appellant sticking her finger in the
victim’s mouth, and the statements from paramedics and doctors stating that the food in
the victim’s mouth was not chewed, as would normally be expected. Muniz then attempted
to gain appellant’s confidence by telling her that good people sometimes make mistakes
and that, by accepting responsibility, appellant could better the situation. Appellant began
to tell Muniz about how she felt pressured by taking care of several children. Muniz
encouraged appellant to continue to tell what had happened that day. As the interview
continued, appellant admitted to hitting the children on occasion and rushing the children
to eat on the day that the child died. After appellant raised the fact that she had a son,
Muniz stated, 
If you, the life of your son is worth more than that, then . . . I recommend . . .
that here is your chance, and like I told you a while ago, you’re going to have
to trust me. And . . . I don’t have anything to do, nothing for the . . . for this
cause, they’re not going to give me anything . . . a prize, nothing. I just want
to do . . . what the best thing is for the little girl, for you, for your son, for the
family. And all of that, what happened, unfortunately already happened. . . 
I’m just telling you what it is . . . and that you accept responsibility, and if you
really love your child, the way you love him . . . and maybe you want a future
with your son . . . here is the opportunity. 
 
As appellant continued to be more forthcoming with information, Muniz continued to
encourage her to tell more by stating,
Sarai, tell me everything that happened that day. The truth. Please for your
own good, for the good of your son. It’s better to be able to talk with
someone about this, for here is your chance, so that you can get all of this
off your insides. And I swear to you, that you’re going to feel better. Then
we will have a place to start off from, and we’ll go forward then.
 
          Appellant then confessed and Muniz asked her to write down her statement. After
appellant gave the written statement confessing to the offense, Muniz informed appellant
that they would have to wait to see what the district attorney wanted to do next. 
          Reviewing the totality of the circumstances, appellant was not given any indication
that she was under arrest prior to the interview. In fact, at the commencement of the
interview, Muniz clearly stated to appellant that she was not under arrest. Muniz further
stated that he was not offering any incentives and that he had nothing personal to gain by
getting appellant to confess. Throughout the interview process, Muniz explained to
appellant that he was looking for the truth and pointed out to appellant the inconsistencies
between her first written statement and the evidence that had been gathered. In our
review, we conclude that Muniz did not induce or attempt to induce appellant into providing
a confession in exchange for any promised benefit. Therefore, we conclude that the
complained of actions of the officer were not of such an influential nature that it induced
appellant to speak untruthfully in response. Muniz, 851 S.W.2d at 254. Thus, the trial
court did not commit error in admitting the videotape and appellant’s written statement
because the admitted evidence was not the result of an inducement or promise of the type
to render the confession inadmissible. We overrule appellant’s second issue.
Requested Jury Instruction
          The first step in deciding upon an appropriate jury instruction regarding
voluntariness of a statement is identifying the theory of involuntariness being claimed by
the defendant. See Oursbourn v. State, No. PD 1687-06, 2008 WL 2261744, at *4
(Tex.Crim.App. June 4, 2008). Potential “involuntary” confession fact scenarios
encompassed by article 38.22 are broader than those covered by the Due Process Clause
or Miranda. Id. at * 7. Other bases for a claim that a statement was involuntarily given,
such as youth, intoxication, or mental retardation are rarely, by themselves, sufficient to
render a statement as inadmissible, but are factors that a jury, armed with a proper jury
instruction, are entitled to consider. Id. An article 38.22, section 6, “general” instruction
asks the jury: “Do you believe, beyond a reasonable doubt, that the defendant’s statement
was voluntarily made? If it was not, do not consider the defendant’s confession.” Id. A
“specific” instruction under article 38.23(a), is fact based and asks the jury a more specific
question such as, “Do you believe that the statement made by defendant was induced by
the officer’s actions? If so, do not consider the defendant’s confession.” Id. It is the
defendant’s responsibility to delineate which type of “involuntariness” he is claiming–a
general (perhaps subjective) lack of voluntariness or a specific police-coerced lack of
voluntariness - because the jury instruction is very different depending upon the type of
claim. Id. 
          At the jury charge conference, appellant requested a jury instruction on the 
voluntariness of her statement. Appellant proposed the following jury instruction:
You are instructed that under our law a statement of a defendant made while
under arrest or in custody may not be used in evidence against a defendant
unless it appears that the statement was freely and voluntarily made, without
compulsion or persuasion. Now, therefore if you find from the evidence or
if you have a reasonable doubt thereof that at the time of the making of the
statement, if any, to Detective Muniz the Defendant was induced by
persuasion to make such a statement, if any, by Detective Muniz by telling
and promising the Defendant that “How much is the life of your son worth?
Here is your chance so that really – let’s see how much really you appreciate
that little boy. That boy, his mother some day, and the question is are you
going to want to have a chance to be with him or not?” The other: And if you
further find that Officer Muniz said “And if you really love your child the way
you love him, and maybe you want a future with your son further, here is the
opportunity” then you will completely disregard such statement as evidence
for any purpose, or will you consider any evidence obtained as a result
thereof. The trial court denied the request. When a defendant requests a “specific” instruction
related to voluntariness as a result of police coercion, the evidence heard by the jury must
(1) raise an issue of fact; (2) be affirmatively contested; and (3) the contested factual issue
must be material to the lawfulness of the challenged conduct in obtaining the statement
claimed to be involuntary. Id. at *10. If there is no disputed factual issue, the legality of
the conduct is determined by the trial court as a question of law. Id. 
          In this case, appellant’s proposed jury instruction specifically asked whether the
police action induced or persuaded appellant to confess. As such, appellant was not
requesting a “general” instruction on voluntariness, but rather a “specific” instruction on
voluntariness under article 38.23.


 Since there is no factual dispute on how the evidence
was obtained, we conclude that the trial court did not err in failing to include an article
38.23 jury instruction. Id. at *12 n.85. 
          As to whether the trial court was required to include a “general” instruction on
voluntariness, under section 6 of article 38.22, an instruction becomes necessary when the
parties litigate a section 6 voluntariness issue before the judge. Id. at *9. Since the trial
court held a pretrial hearing on the issue of voluntariness, appellant was entitled to an
instruction under section 6 of article 38.22. But because appellant never requested a
“general” voluntariness instruction, she is entitled to a review of that error only under
Almanza’s “egregious harm” standard.


 Id. at *13. 
          Reviewing the facts, as discussed in the second issue, the totality of the
circumstances do not support a finding of egregious harm. Along with appellant’s
confession and videotape interview, the jury had testimony from the neighbors, firefighter,
paramedics and doctors, who all testified to finding unchewed food in the child’s mouth. 
One of the other children also testified to observing appellant place food in the victim’s
mouth with her fingers. Further, the jury heard of appellant’s phone calls to her sister
admitting to the offense. Finally, the jury heard about the autopsy which concluded that
the victim died from choking on food. We conclude that the trial court’s failure to include
a “general” instruction on voluntariness did not injure the rights of appellant to have a fair
and impartial trial. Almanza, 686 S.W.2d at 172. We overrule appellant’s final issue.
Conclusion
          For the foregoing reasons, we affirm the trial court’s judgment. 
 
                                                                Mackey K. Hancock

                   Justice







Quinn, C. J., concurring in result. 







Do not publish.